(No. 20346.— )
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MATHEW DWYER, Plaintiff in Error.

*Opinion filed December 18, 1930.*

JOHN F. CASHEN, JR., for plaintiff in error.

Oscar E. Carlstrom, Attorney General, John A. Swanson, State's Attorney, and James B. Searcy, (Edward E. Wilson, and Charles A. Bellows, of counsel,) for the People.

Mr. Justice Orr delivered the opinion of the court:

This case is presented upon a writ of error to the criminal court of Cook county, where a jury found the defendant, Mathew Dwyer, guilty of the crime of forgery. He was sentenced to the penitentiary at Joliet. The indictment contained two counts, one charging defendant with forgery of an endorsement of H. L. Oppenheimer to a check issued by Jackson Bros., Boesel & Co., defendant's employers, in the sum of $1844.33, and the second count charging the uttering of the check.

Dwyer was employed as a margin clerk in their main Chicago office by Jackson Bros., Boesel & Co., stock brokers, who also maintained a branch called the Stockyards office. While so employed Dwyer opened a trading account for himself at the Stockyards office under the name of H. L. Oppenheimer, an acquaintance, but without the authorization or knowledge of Oppenheimer. Various buying and selling orders for shares of stock in the name of Oppenheimer were placed by Dwyer, and purchasing orders were approved by him as margin clerk without depositing any money or collateral to cover the margins, contrary to the rules of the firm. As part of his duties Dwyer was required to O. K. checks before the cashier issued them for money due the firm's customers. By means of false dealings without money or marginal collateral Dwyer accumulated a balance of $1844.33 in the Oppenheimer account, and on March 25, 1929, requested the cashier to make out a check in this amount payable to H. L. Oppenheimer. The firm check was accordingly issued in regular course and endorsed "H. L. Oppenheimer" by Dwyer, who opened an account in the name of H. L. Oppenheimer in the National Bank of

the Republic. Under the Oppenheimer name he afterwards checked out this money for his own use. In April, 1929, Oppenheimer became aware of the use of his name by Dwyer in stock trading and ordered him to cease such practice, and this Dwyer promised to do. Dwyer's dealings were discovered shortly afterwards by his employers, and upon being charged with the false account he made a detailed written confession, which was introduced at his trial without objection. Dwyer pleaded not guilty, but made no defense outside of introducing two witnesses in support of his reputation for truth and veracity.

Among other errors assigned, Dwyer claims that he was not proved guilty of forgery as no intent to defraud was shown. The definition of forgery is found in section 105 of our Criminal Code, (Smith's Stat. 1929, chap. 38, par. 277,) and this court has previously held that to constitute forgery the three following elements must exist: (1) There must be a false writing or alteration of an instrument; (2) the instrument as made must be apparently capable of defrauding; and (3) there must be an intent to defraud. (*Goodman* v. *People,* 228 Ill. 154.) Forgery is the fraudulent making or altering of a writing to the prejudice of another's right, and both the fraudulent intent and the making must combine to complete the offense. (*People* v. *Pfeiffer,* 243 Ill. 200.) The record here shows conclusively that Dwyer opened a trading account in the name of H. L. Oppenheimer and bought and sold stocks in Oppenheimer's name, first without the latter's knowledge and afterwards contrary to the latter's positive instructions. Purchases were made without money or collateral margin, which Dwyer knew was contrary to the rules of his employers. When Dwyer falsely procured the firm check payable to Oppenheimer he knew that he would either have to get Oppenheimer to endorse the check, or he, Dwyer, would have to forge his name. The forgery by Dwyer of Oppenheimer's endorsement on the check was admitted. The check

as made was an instrument apparently capable of defrauding. The violation of his employers' rules by dealing in stocks under a false account, the abuse of his employers' confidence by waiver of margin or collateral, and the improper procurement of the firm check payable to Oppenheimer, all manifested Dwyer's intent to defraud his employers.

Dwyer also contends that there was a fatal variance between the allegations in the indictment and the proof, and that the proof was sufficient to convict him only of obtaining money by false pretenses, relying upon the case of *People* v. *Pfeiffer, supra.* But that case is not a parallel authority, because there the defendant, Pfeiffer, did not forge anything. He did not write another's name without authority on an instrument to the prejudice of anyone but merely persuaded a trustee to make some new notes, pretending that the old notes had been destroyed. Likewise the case of *White* v. *Wagar,* 185 Ill. 195, also cited by defendant, is not in point, because there the principal question was whether labels and trade-marks were subject to forgery.

It appears that during the trial the court permitted evidence to be introduced with reference to other false trading accounts opened by Dwyer where losses were sustained but forgery not proved, and Dwyer claims that the introduction of this testimony was prejudicial error. The court specifically instructed the jury to disregard any of the testimony in question. The admission of such testimony was not reversible error, as it has been held that where competent testimony in the record shows the defendant clearly guilty and there is no denial thereof, the fact that incompetent evidence was admitted will not reverse the judgment. *People* v. *Burger,* 259 Ill. 284; *People* v. *Strosnider,* 264 id. 434.

Dwyer further contends that the *corpus delicti* was not proved, and cites *Williams* v. *People,* 101 Ill. 382. But that case is not in point, as the conviction there rested solely

upon defendant's confession. In the case at bar the *corpus delicti* was proved by ample testimony in the record other than the confession of defendant. The testimony of Oppenheimer, together with that of Dwyer's fellow-employees, and the introduction of the check itself, furnished sufficient evidence to support the conviction of forgery.

Dwyer insists that the court erred in giving instructions numbered 1 and 2 for the People. The first instruction defined forgery and the second related to the uttering of the check. These two instructions might have been drawn with fewer words and confined merely to the endorsement to the check in question, but the giving of them did not mislead the jury since they were confined strictly to the subject matter of the forgery.

It was not error for the court to refuse defendant's instruction 20, as this instruction appears covered by instructions 10 and 12 given for the defendant.

Defendant urges that the verdict of the jury and the judgment of the court are contrary to the evidence and the law, but a review of the evidence convinces us that the defendant, by forging the endorsement of H. L. Oppenheimer on the check in question, was clearly guilty of forgery. The defendant knew that he was fraudulently getting money from his employers by a scheme involving fictitious trading, a false procurement of a valid check payable to a person who had no dealings with his employers, and a forged endorsement. His actions clearly showed an intent to defraud his employers, and the consummation of that intent when he falsely endorsed another's name on the check and received the money.

The other points raised by defendant have been carefully noted but are not of sufficient merit to warrant further consideration.

In our opinion the defendant was properly found guilty of forgery, and the judgment of the criminal court is therefore affirmed.

*Judgment affirmed.*