(No. 24983.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH KUBANEK, Plaintiff in Error.

*Opinion filed February 20, 1939.*

GEORGE M. TEARNEY, for plaintiff in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, BLAIR L. VARNES, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Joseph Kubanek was adjudged guilty of the crime of forgery by a jury in the criminal court of Cook county and was sentenced to the penitentiary for a term of one to fourteen years. He has sued out this writ of error.

Kubanek and Allen B. Blazer were charged with forgery in four counts of the indictment, and with conspiracy to obtain money under false pretenses from Mrs. W. N. Burns, in the fifth count. At the close of the People's evidence a *nolle prosequi* was entered on all counts as to Blazer, and as to both defendants on the fifth count.

Kubanek contends that he was not guilty of forgery under the facts proved. The evidence shows that Kubanek became acquainted with Mrs. W. N. Burns, a widow sixty-nine years old, while she was staying at the South Lake Hotel early in 1936. Defendant was employed at the hotel, and on eight or nine occasions Mrs. Burns gave him checks which she had signed but had not filled in. He would run errands for her and would fill in the signed checks and pay for the items bought for Mrs. Burns. In March of 1936, Mrs. Burns became very ill and signed two checks in blank and gave them to defendant so that he could pay for the expenses of her illness, and for her funeral if she should die. It also appears that defendant found a buyer who paid over $6000 for her home. Mrs. Burns recovered, but defendant filled in each check for $3000 and made both payable to himself. He endorsed both checks as follows: "Pay to the order of Joseph Kubanek only. Mrs. W. N.

Burns." Later he placed his own signature beneath that endorsement. An attorney advised him to place the restrictive endorsement on the check "so there wouldn't be any discrepancy in regard to the sum of money." Mrs. Burns denied placing her signature on the endorsement, and defendant claims she placed the endorsement there at his request, but as the check was payable to defendant it is not material who signed the restrictive endorsement, since it was unnecessary in any event. Defendant cashed one check at the First National Bank of Chicago, and was arrested when he went to cash the second check. He had attempted to cash the second check by giving it in payment for a new automobile, but the dealer's banker advised him to have defendant obtain the cash and pay for the automobile. Defendant deposited $1500 in the name of George Baker, an *alias,* in the Mutual National Bank, with which he had had no previous business relations. The defendant testified that Mrs. Burns gave him $6000 because she liked him and thought that a person of his intelligence would do more with the money than would her relatives. She told defendant that her relatives were constantly borrowing money from her and were simply waiting for her to die. The defendant said he protested that she was giving him too much, but he filled in the checks as she directed. He carried them around for several days so that she would have time "to think it over." Mrs. Burns denied that she ever authorized defendant to fill in the checks as he did. Defendant urges in his points relied on for reversal that the verdict is against the weight of the evidence, but he has not argued the point, and it is without merit.

The sole question argued is whether the defendant, by filling in the checks over the admittedly genuine signature of Mrs. Burns, but in violation of his authority, is guilty of forgery. He relies on *People* v. *Kramer,* 352 Ill. 304, where Kramer, a county clerk, drew a warrant on Marion county payable to himself. He had authority to issue county

orders when so directed by the county board of supervisors, and when countersigned by the county treasurer they were valid. In the *Kramer case,* the order was issued without authority of the county board. We said that the instrument was genuine, though it contained false statements, and that since there had been no false making Kramer was not guilty of forgery. We said, at page 309: "To constitute forgery there must be the making of a writing which falsely purports to be the writing of another person or to be genuine or authentic." We have re-examined that decision and in so far as it is inconsistent with the decision we have reached here, it is not adhered to. The general rule is that where authority is given to one to fill in blanks in an instrument, a filling in of such blanks other than as authorized constitutes forgery, where the other elements of forgery are present. 2 Wharton's Crim. Law, (12th ed.) sec. 878, p. 1183; 26 Corpus Juris, sec. 6, p. 898; 12 R. C. L. sec. 10, p. 147; and an annotation to *Hicks* v. *State of Georgia,* 176 Ga. 727, 87 A. L. R. 1166, where the cases are collected.

Section 105 of the Criminal Code, *supra,* provides that "every person who shall falsely make, alter, forge or counterfeit any * * * check * * * with intent to damage or defraud any person, body politic or corporate * * * or shall utter, publish, pass or attempt to pass as true and genuine, * * * any of the above named false altered, forged or counterfeited matters * * * knowing the same to be false, * * * shall be deemed guilty of forgery." There may be cases of forgery where the instrument does not purport to be the instrument of another. Under our statute there are three elements of the crime of forgery: (1) There must be a false writing or alteration of an instrument; (2) the instrument, as made, must be apparently capable of defrauding, and (3) there must be an intent to defraud. (*People* v. *Dwyer,* 342 Ill. 105, 107; *Goodman* v. *People,* 228 id. 154.) After stating several definitions of forgery, the editors of Ruling Case Law say: "Experi-

ence has shown, however, that no generic definition of forgery can be comprehensive enough to include all the crimes that may be committed by the simple use of pen and ink. And for this reason legislatures have found it necessary to frame statutes broad enough to include in the category of forgeries many acts which are criminal in their tendency and effect but do not fall within the earlier definitions of that crime." (12 R. C. L. 140.) It is noteworthy that if Kubanek had altered the check by changing the name of the payee or raising the amount there would be no question of his guilt. It is just as clear that the check was falsely made when he filled in the blanks over the drawer's genuine signature. The statute is not directed solely against forgery of signatures, but includes false making, altering, and counterfeiting, when done with the intent to damage or defraud any person. *People* v. *Kramer, supra,* is not adhered to, and the judgment of conviction is affirmed.

*Judgment affirmed.*