(No. 25999.—

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff in Error,
*vs.* ERNEST W. MAU, Defendant in Error.

*Opinion filed June 13, 1941—Rehearing denied September 10, 1941.*

MURPHY, J., dissenting.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURT-
NEY, State's Attorney, and A. B. DENNIS, (EDWARD E.
WILSON, JOHN T. GALLAGHER, ROBERT E. WRIGHT, and
MELVIN S. REMBE, of counsel,) for the People.

CAMERON LATTER, JAMES ELLWYN DANIELS, and
JOSEPH W. GRADY, for defendant in error.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The criminal court of Cook county quashed an indictment returned against Ernest W. Mau and the People have sued out this writ of error to review that judgment under the authority given them by paragraph 747 of the Criminal Code. Ill. Rev. Stat. 1939, chap. 38, par. 747.

The sole question is, did this indictment charge the crime of forgery? The allegations of the indictment were that on April 12, 1937, and for some time prior thereto, defendant was the comptroller of the city of Berwyn. As such he had general supervision of all the accounting which related to the fiscal affairs of that city. In his official capacity he had custody and control of the city's account books and records of its several funds, including the special assessment fund. It was also alleged that when a special assessment bond was presented for payment by the holder thereof, defendant had the duty to examine the account books in his office in reference to the fund from which such a bond was payable and to determine whether the fund was sufficient to pay the bond either in whole or in part; that if the fund was sufficient, defendant had the duty to prepare in triplicate a special assessment disbursement sheet. He was required to enter on it the name and address of the bondholder who presented the bond; the serial number, the amount of money in the fund available for payment, and if there was not enough to pay the bond in full, the amount remaining due after the partial payment had been made. The original white disbursement sheet was to be delivered together with the remittance to the person who presented the bond. A yellow second copy or disbursement sheet was retained, filed in the office of the comptroller as a part of the official records of that office and constituted the original record of the disbursement. In the execution of the warrant and authorization for pay-

ment, the mayor and treasurer of the city relied on the information contained in this duplicate disbursement sheet.

The charge is that on said date the defendant "did unlawfully, feloniously, fraudulently, wilfully and falsely make, forge and counterfeit a certain 'duplicate' special assessment disbursement sheet of said city of Berwyn, which said false, forged, fraudulent and counterfeit 'duplicate' special assessment disbursement sheet then and there bore the signature of said Ernest W. Mau as such comptroller and then and there purported to be a record and authentic matter of a public nature of said city of Berwyn and then and there was in the words, letters and figures following:

"(Duplicate)
CITY OF BERWYN, ILLINOIS
OFFICE OF COMPTROLLER
Berwyn, Ill. Apr. 12, 1937

To Joseph Busac                    When writing please
    5013 W. 27 Place               give this number
    Cicero, Ill.                   S. A. No. 2865

We enclose herewith City of Berwyn Warrant No. 2924 for $381.00 in settlement of the following:

| 1 Bond Cpn | 2 Warrant No. | 3 Bond No. | Inst. | 4 Amount Paid | 5 Amount Returned |
|------------|---------------|------------|-------|---------------|-------------------|
| B          | 451           | 8898       | 10    | 76.00         | 624.00            |
| B          | 508           | 9122       | 6     | 273.00        | 477.00            |
| C          | 508           | 9122       | 6     | 32.00         | 14.00             |
|            |               |            |       | $381.00       |                   |

No funds being at this time available, items shown in column 5 above is herewith returned.

CITY OF BERWYN
by Ernest W. Mau
Comptroller."

It was alleged such duplicate sheet was false, fraudulent, forged and counterfeited in that it purported to state

that Joseph Busac, residing at a certain address in the city of Cicero, had presented bonds of the serial number stated while in truth and in fact the bonds specified in said sheet had not been presented for payment, that they were held by persons not named in said sheet, and that Joseph Busac and the purported address were fictitious, all of which the defendant well knew; that the mayor and treasurer of the city, relying upon such statements as true, executed a warrant to the order of Joseph Busac for the amount of $381 and the treasurer executed an authorization of payment directing the depositary of the fund to pay said amount from the special assessment fund of the city and that, by reason thereof, the said Ernest W. Mau made, forged and counterfeited said duplicate special assessment disbursement sheet with the intent thereby then and there to prejudice, damage and defraud the city of Berwyn and that by reason of the premises he is deemed guilty of forgery.

The pertinent provisions of section 105 of division 1 of the Criminal Code (paragraph 277) are: "Every person who shall falsely make, alter, forge or counterfeit any record or other authentic matter of a public nature * * * or shall utter, publish, pass or attempt to pass as true and genuine * * * any of the above named false, altered, forged or counterfeited matters * * * knowing the same to be false, altered, forged or counterfeited, with intent to prejudice, damage or defraud any * * * body politic * * * shall be deemed guilty of forgery," etc.

Common law forgery is defined in Bishop's New Criminal Law, volume 2, paragraph 523, as follows: "Forgery, at the common law, is the false making or materially altering, with intent to defraud of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability. * * * Reduced to the briefer expression, 'Forgery is the fraudulent making of a false writing, which, if genuine, would be apparently of some

legal efficacy.' " But in paragraph 584 the learned author, under the title "Making in one's own name a false writing to defraud," says: "1. How in England.—Coke says that forgery 'is properly taken when the act is done in the name of another person.' Yet he also lays down the further doctrine, which seems to rest on ancient adjudication, and which the English commissioners affirmed in their report of 1840, that, as expressed by the latter, 'An offender may be guilty of a false making of an instrument although he sign and execute it in his own name, in case it be false in any material part, and calculated to induce another to give credit to it as genuine and authentic, when it is false and deceptive. This happens where one, having conveyed land, afterwards for the purpose of fraud executes an instrument purporting to be a prior conveyance of the same land. Here the instrument is designed to obtain credit by deception, as purporting to have been made at a time earlier than the true time of its execution.' " (*Regina* v. *Ritson,* L. R. 1 Cr. Cas. 200 (1859).) This is found in paragraph 585: "2. In just principle,—this sort of writing is as distinctly false as any falsely purporting to be signed by a third person. In the illustrative case before us, it is in genuine legal form, and it falsely professes to have created a title which ousts the true owner. Thus is covered the whole idea of forgery. Therefore there is no ground for rejecting the doctrine of the English books as it appeared in them when our country was settled. Looking into them for authority we find it all one way. Said Blackburn, J., in the English case just cited: 'There is no definition of "forge" in the statute, and we must therefore inquire what is the meaning of the word. The definition in Comyns (Dig. tit. Forgery, A, I) is, 'Forgery is where a man fraudulently writes or publishes a false deed or writing to the prejudice of the right of another,'—not making an instrument containing that which is false, which, I agree with Mr. Torr, would not be forgery, but making an instrument which

purports to be that which it is not. Bacon's Abr. (tit. Forgery, A.), which, it is well known, was compiled from the manuscript of Chief Baron Gilbert, explains forgery thus: 'The notion of forgery doth not so much consist in the counterfeiting of a man's hand and seal, . . . but in the endeavoring to give an appearance of truth to a mere deceit and falsity, and either to impose that upon the world as the solemn act of another which he is in no way privy to, or at least to make a man's own act appear to have been done at a time when it was not done, and by force of such a falsity to give it an operation which in truth and justice it ought not to have.' The material words, as applicable to the facts of the present case, are, 'to make a man's own act appear to have been done at a time when it was not done.' When an instrument professes to be executed at a date different from that at which it really was executed, and the false date is material to the operation of the deed, if the false date is inserted knowingly and with a fraudulent intent, it is a forgery at the common law. . . . All the text-books agree, and there is no single authority against the definition I have stated. Mr. Torr, however, says that the definition is old. I think that this gives it all the greater weight. Plainly,—

"3. Altering Own.—The broad doctrine is not maintainable that a man cannot commit forgery of an instrument executed by himself. If, for example, after he had signed, sealed, and delivered a deed, he should surreptitiously, getting it into his temporary possession, alter it to accomplish some fraud, this would be forgery. And if one alters a document which he has previously forged, he commits a new offense."

In the case of *Ex Parte Hibbs*, 26 Fed. 421, Hibbs, the postmaster at Lewiston, Idaho, issued a postal money order on the application of a fictitious person, without consideration therefor, payable to a bank. He wrote, at the same time, in the name of the fictitious person and directed the bank to collect the money and send it in a registered pack-

age to the fictitious person at Pierce City. He then intercepted the package when it passed through his post-office and converted the contents to his own use. It was held that his act constituted forgery under the common law and under the statute of the United States. After discussing the case of *Regina* v. *Ritson, supra,* the court said: "But in my judgment there is no difference in law or morals in making a deed with a false date for the purpose of defrauding another, and falsely making and issuing a money order, as postmaster, without consideration or authority for the same purpose. In either case, the party does, by force of his falsity and deceit, give the instrument, in the language of the authority above cited, 'an operation which in truth and justice it ought not to have.' This case also comes within the well-known rule, long since established, that it is forgery for an agent, who has authority to fill, with a particular sum, a blank in a paper signed by his principal, to fill it with a larger one; or to fill it at all without authority. (1 Wharton on Criminal Law, pars. 671, 672.) In my judgment, the filling the blank in each of these orders with the sum of $100 by the prisoner, when acting as the agent of the United States, contrary to his authority and the positive directions of his principal, being done with intent to defraud was a false making and forgery thereof."

In the case before us Mau was the agent of the city and only had authority to make true, genuine, correct and valid special assessment disbursement sheets. In *People* v. *Kubanek,* 370 Ill. 646, Kubanek was the agent for Mrs. Burns. He had authority to fill in two checks to pay the expense of her illness and her funeral bill if she should die. He filled the checks in and made them payable to himself. We reexamined the case of *People* v. *Kramer,* 352 Ill. 304, and overruled that decision because Kramer was acting in a ministerial capacity as agent of Marion county, Illinois, of which he was the county clerk, and exceeded his authority by drawing a county order payable to himself for a debt that did not exist. The *Kramer* decision contained no dis-

cussion of the fact that Kramer exceeded his authority with intent to defraud his county. The following appears in paragraph 580 of Bishop's New Criminal Law: "1. Agent disobeying instructions—In civil jurisprudence, the principal is often bound by the acts of his agent in disobedience of instructions,—an estoppel necessary for the protection of innocent third persons. But this doctrine has no relevancy to the criminal law of forgery. Obviously an authority to do one thing is not an authority to do another and different thing. So that,—

"2. Wrongly filling Blank.—If a person signs and delivers to his clerk a blank check on a bank, or a blank bill of exchange with direction to fill the blank with a sum named, the clerk by fraudulently filling it with a larger sum commits forgery. And it is forgery fraudulently to fill a blank for the name of the grantee in an executed deed of land."

In *People* v. *Kubanek, supra,* we pointed out that experience has shown that no generic definition of forgery can be comprehensive enough to include all the crimes and cheats that may be committed by the simple use of pen and ink. For this reason legislatures have found it necessary to enact statutes broad enough to include in the category of forgeries many acts criminal in their effect that would not fall within the earlier definitions of that crime. Our statute provides that whosoever shall "falsely make, alter, forge or counterfeit any record or other authentic matter of a public nature" shall be guilty of forgery.

What did the General Assembly mean by the phrase "falsely make * * * authentic matter of a public nature"? It could not have meant to limit the case to the forgery of the name of the person who was authorized to make the authentic matter of a public nature, or a record, for such an instrument or record would not be "authentic." It would have no legal effect. If the statutory provision is to be given effect it follows that anyone authorized to make up the record or to execute the authentic matter of a

public nature, will be guilty of forgery if he makes such record or executes such authentic matter, knowing that its contents are false and untrue, and if by so doing he intends to defraud either an individual or the body politic by which he was employed. This construction is supported by the later provision of the section to the effect that whoever shall "utter, publish, pass * * * any of the above named false, altered, forged or counterfeited matters" shall be guilty of forgery. It is to be noted that in this part of the section, "false" and not "falsely made" is the term used.

The allegations of this indictment charge an offense against this section of our Criminal Code. It charges that Mau exceeded his authority as comptroller. If he made the false special assessment disbursement sheet he was not authorized to make, with intent to defraud the city, knowing that it was a false record, although authentic in the sense that he was the person authorized to make special assessment disbursement sheets, he subjected himself to prosecution for forgery as defined in our statute.

For the reasons stated the judgment of the criminal court of Cook county is reversed and this cause is remanded, with directions to that court to overrule the motion to quash.

*Reversed and remanded, with directions.*

Mr. JUSTICE MURPHY, dissenting.

Per CURIAM: Counsel for defendant in error have called to our attention on petition for re-hearing the case of *People* v. *Pfeiffer,* 243 Ill. 200, in which it was said that under the general statute relating to forgery the English rule herein referred to does not apply. The statute here involved as cited and quoted from relates to falsely making, altering, forging or counterfeiting "any record or other authentic matter of a public nature." What was said in the *Pfeiffer case* regarding the non-applicability of the English rule does not apply here.