**CAPITOL BANK OF CHICAGO,**
Plaintiff-Appellant,

v.

The **FIDELITY AND CASUALTY COM-
PANY OF NEW YORK,** Defendant-
Appellee.

**No. 17289.**

United States Court of Appeals
Seventh Circuit.

July 28, 1969.

Frank J. McGarr, Chicago, Ill., for plaintiff-appellant; Walter H. Moses, Jr., Chicago, Ill., of counsel.

Edward D. Lapperre, James J. Doheny, Chicago, Ill., for defendant-appellee.

Before KNOCH, Senior Circuit Judge, and FAIRCHILD and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff sued to recover from defendant under a blanket indemnity bond. Jurisdiction is conferred on this court under 28 U.S.C. § 1332. The district court denied plaintiff's motion for summary judgment and granted defendant's motion for summary judgment. There is no dispute as to the facts.

On July 1, 1966, plaintiff and defendant entered into a Bankers Blanket Bond insurance contract. Plaintiff on May 4, 1966, made a loan to Charles N. May & Co. The loan was collateralized by an assignment of accounts receivable of Charles N. May & Co. from Alabama Alcholic Beverage Control Board. Invoices were supplied the plaintiff as evidence of the accounts receivable. The true and correct signature of Charles N. May was affixed to the invoices. After Charles N. May & Co. could not pay its obligation, plaintiff confessed judgment on the note. Plaintiff then sought to satisfy its judgment by realizing on the

collateral; but the Alabama Alcoholic Beverage Control Board had no record of the invoices assigned and owed no sum to Charles N. May & Co. Plaintiff filed a proof of loss with defendant in order to collect under the blanket indemnity bond. Defendant maintained that such a loss was not covered by the bond.

The blanket indemnity bond excludes:

(d) Any loss the result of the complete or partial non-payment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or false pretenses, except when covered by Insuring Clause (A), (D), or (E).

Clauses (A) and (D) do not apply to the type of loss in the present case. Clause (E) provides:

(E) Any loss through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity, or raised or otherwise altered or lost or stolen. * * *

Plaintiff first contends that the invoices were forged and, therefore, the loss was covered under Clause (E). Since the contract was entered into in Illinois, applying Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we must decide the meaning of forgery as used in the bond under Illinois law. To decide the meaning of forgery as used in an insurance policy, most courts have looked to its use

in the criminal law. 52 A.L.R.2d 208. In People v. Kubanek, 370 Ill. 646, 19 N.E.2d 573 (1939), the Illinois Supreme Court held that any alteration or false writing in an instrument for the purpose of defrauding is included within the meaning of forgery as used in the statute. Further, in People v. Mau, 377 Ill. 199, 36 N.E.2d 235 (1941), the court concluded that "If the statutory provision is to be given effect it follows that anyone authorized to make up the record or to execute the authentic matter of a public nature, will be guilty of forgery if he makes such record or executes such authentic matter, knowing that its contents are false and untrue, and if by so doing he intends to defraud * * *." 377 Ill. at 206–207, 36 N.E.2d at 239. It would seem that under Illinois law, the invoices here are forged.

In the insurance contract "forged" is modified by the phrase "as to the signature." This court in interpreting the entire phrase under Wisconsin law concluded, relying on Quick Service Box Co. v. St. Paul Mercury Indemnity Co., 95 F.2d 15 (7th Cir.1938), that it did not matter whether the document itself was false and the signature authentic or the document authentic and the signature false. Security National Bank of Durand v. Fidelity and Casualty Co. of New York, 246 F.2d 582, 585–586 (7th Cir. 1957). The Supreme Court of Wisconsin did not accept this interpretation but, relying on the distinction as expressed in Marteney v. United States, 216 F.2d 760 (10th Cir.1954), between falsity in the execution and falsity in the content, held under similar facts that false invoices did not come under the phrase "forged as to the signature." First American State Bank v. Aetna Casualty & Surety Co., 25 Wis.2d 190, 130 N.W.2d 824 (1964). Since we are construing Illinois law and both *Quick Service Box* and *Durand* are based on Wisconsin law, we are not bound by the result reached therein.

■■ We think that if the Illinois Supreme Court were faced with the same issue, it would conclude that

forged as to the signature relates to false execution with intent to defraud. In *Kubanek* and *Mau* the court refused to adopt a restricted view of forgery because of the broad nature of the statute. "The statute is not directed solely against forgery of signatures, but includes false making, altering, and counterfeiting, when done with the intent to damage or defraud any person." People v. Kubanek, 370 Ill. 646, 650, 19 N.E.2d 573, 574 (1939). Clause (E) contains not only the word "forgery" but rather it specifically limits coverage to forgery as to the signature with the intention of only insuring against losses from forgery in the execution. Here, since the invoices were properly signed, there was no false execution.

Plaintiff next contends that the invoices are counterfeit and, therefore, recovery should be granted under Clause (E). There is a conflict in the Circuits as to whether or not invoices representing fraudulent transactions come within this provision. The Third Circuit in concluding that the bank could collect in Fidelity Trust Co. v. American Surety Co. of New York, 268 F.2d 805 (1959) read Clause (E) as follows:

> "Plaintiff is protected against loss from its having acted upon
>
> 'written instruments which prove to have been counterfeited
>
> or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity,
>
> or raised
>
> or otherwise altered
>
> or lost
>
> or stolen * * *'"
>
> 268 F.2d at 807.

The court in First National Bank of South Carolina v. Glens Falls Insurance Company, 304 F.2d 866 (4th Cir. 1962), reached the opposite result by reading the provision such that both counterfeited and forged are modified by "as to the signature." Judge Soper

based his decision on the following points, 304 F.2d at 869–870: (1) The provision is meticulously punctuated but there is no comma after counterfeited; (2) both counterfeited and forged documents may contain "the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor" or a "signature of any person signing in any other capacity;" (3) the clause following the one pertaining to counterfeited or forged instruments refers to raised or altered documents with no mention of signature; (4) the bond provides: "Mechanically reproduced facsimile signatures are treated the same as handwritten signatures;" and (5) the bond excludes losses from failure to pay loans obtained by fraud or false pretenses.

In First National Bank and Trust Co. v. United States Fidelity and Guaranty Co., 347 F.2d 945 (10th Cir.1965), and Exchange National Bank of Olean v. Insurance Company of North America, 341 F.2d 673 (2d Cir.1965), the conclusion was that invoices representing non-existent transactions were not counterfeit within the meaning of that term. Counterfeit means the imitation of an instrument that is authentic such that a party is deceived on the basis of the quality of the imitation. Here, the bank was defrauded because the underlying transaction did not take place rather than by the similarity of the invoices presented to authentic ones. The argument of the court in Exchange National Bank of Olean v. Insurance Company of North America, 341 F.2d 673 (2d Cir. 1965), that the risk of fraudulent invoices must be borne by the bank is persuasive.

There is a difference between extending credit on the basis of pledged counterfeit stock certificates, a risk clearly within the purview of the bond, and extending credit on the basis of invoices that cover nonexistent shipments and that have been submitted as evidence of previously pledged accounts receivable. The bank could verify the existence of the pledged accounts receivable by inquiring with the loan applicant's purported customer, while detecting a counterfeit security is likely to pose significantly different and more serious risks to the bank. *Id.* at 676.

We agree with the reasoning of the majority of Circuits and conclude that the losses sustained by the bank were not covered under Clause (E) of the blanket indemnity bond.

▪ Plaintiff also claims that it is entitled to recovery under the provision insuring against theft in Clause (B)[1] However, the exclusion clause in the bond prevents recovery for loss resulting from non-payment of a loan obtained by a false pretense unless covered by Clauses (A) (D) or (E). The loss here is covered by the exception. Cf. First National Bank of Memphis v. Aetna Casualty & Surety Co., 309 F.2d 702 (6th Cir.1962).

Affirmed.

---

ON PREMISES

1. (B) Any loss of Property through robbery, burglary, common-law or statutory larceny, theft, false pretenses, hold-up, misplacement, mysterious, unexplainable disappearance, damage thereto or destruction thereof, whether effected with or without violence or with or without negligence on the part of any of the Employees, and any loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of Property, while the Property is (or is supposed to be) lodged or deposited within any offices or premises located anywhere, except in an office hereinafter excluded or in the mail or with a carrier for hire, other than an armored motor vehicle company, for the purpose of transportation.