(No. 21517.—

The People of the State of Illinois, Defendant in Error, *vs.* Paul W. Kramer, Plaintiff in Error.

*Opinion filed April 22, 1933.*

R. J. Branson, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, WARD P. HOLT, State's Attorney, and J. J. NEIGER, for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Paul W. Kramer was convicted of forgery in the circuit court of Marion county. He prosecutes this writ of error to review the judgment.

The indictment consisted of eight counts. Each of the first four counts charged that the defendant, being the county clerk of Marion county, on November 26, 1930, with intent to damage and defraud the county of its moneys, did forge and falsely and fraudulently make a certain county order for the payment of money, which county order was drawn by Paul W. Kramer, the county clerk of the county of Marion, for the sum of $2063.28, of the value of $2063.28, payable to Paul W. Kramer, county clerk of the county of Marion, dated November 26, 1930. Each of the other four counts charged the uttering, publishing, and passing as true and genuine, of the same order with the same intent, knowing the order to be false.

A motion was made to quash the indictment on the ground that the grand jury was not regularly empaneled. It appeared on the hearing of this motion that the clerk of the circuit court received from the county clerk a list of twenty-three names selected by the supervisors as grand jurors for the September term, 1931, of the circuit court, and on September 8 inserted their names in a venire requiring them to appear on September 28, 1931, to which he attached the seal of the court but omitted to attest the writ by his own signature. The sheriff notified each of the persons named, by postal-card, to appear at the time and place and for the purpose stated and requested them to acknowledge service. They did so and were not otherwise served, but all appeared except two who were excused and one who did not appear until the jury had been empaneled. The sheriff made no return to the writ. Twenty

grand jurors having appeared, the sheriff, by direction of the court, filled the panel. It is argued that the grand jury was not lawfully empaneled. The grand jurors, so far as appears, were lawfully selected. Though the venire was void, its only service was to notify the grand jurors that they were required to appear at the time fixed. They were so notified and were present in court when, according to the law, they should have been. Being there, there was no reason to inquire when or how they were notified, and the court properly proceeded to empanel them for the purpose for which they had been selected.

A further objection to the indictment of a more serious nature was made on the motion to quash. It is that the indictment did not charge a crime, because, while it charged that the defendant forged and falsely and fraudulently made a county order, it also disclosed that the defendant was the county clerk of Marion county, the only person authorized by law to draw a county order, and the order, therefore, instead of being forged and false, was genuine. The statute (section 105 of the Criminal Code) provides that "every person who shall falsely make, alter, forge or counterfeit any * * * county order * * * with intent to damage or defraud any person, body politic or corporate, * * * or shall utter, publish, pass or attempt to pass as true and genuine, * * * any of the above named false, altered, forged or counterfeited matters, as above specified and described, knowing the same to be false, * * * shall be deemed guilty of forgery." The conclusion, however, that the order was genuine and not forged is based on the hypothesis that the county clerk alone may draw county orders. This is not true. The County Clerk act prescribes in section 10 the duties of the county clerk, as follows: "1st. To act as clerk of the county board of his county and to keep an accurate record of the proceedings of said board, file and preserve all bills of account acted upon by the board, and when any account is allowed or disallowed, he shall note

that fact thereon, and when a part of any account is allowed he shall note particularly the items allowed. 2d. To keep a book in which he shall enter the number, date and amount of each order upon the county treasurer, and the name of the person in whose favor the same is drawn, and when such order is canceled, he shall note the date of cancellation opposite such entry. 3d. Before any such order is delivered to the person for whose benefit it is drawn, the county clerk shall present the same to the county treasurer, who shall personally countersign the same." The County Treasurer act provides in section 7, in respect to county orders and their payment, as follows: "When any county order is presented to him to be countersigned, the county treasurer shall personally countersign the same, and shall also enter in a book, to be kept by him for that purpose, its number, date and amount, and the name of the person to whom the same is payable, and when any such order is paid, he shall cancel the same, and note the fact opposite such entry." Section 8 provides: "The county treasurer shall not countersign any county order before the same is filled up, nor until he shall have examined the records of the county board, and ascertained that the issuing of such order is warranted thereby." Section 9 provides: "No money or funds shall be paid out of any county treasury, except in accordance with an order of the county board, or when payment is specially authorized by law to be made." Paragraph 15 of section 1 of chapter 131 of our statutes provides that in the construction of all statutes "the words 'written' and 'in writing' may include printing and any other mode of representing words and letters; but when the written signature of any person is required by law to any official or public writing or bond, required by law, it shall be in the proper handwriting of such person, or in case he is unable to write, his proper mark." It is therefore apparent that a county clerk cannot alone draw a county order on which money could be collected from the county treasury

or by which the county could be damaged and defrauded of its money. An order bearing his signature alone is of no effect. It requires, before its completion by delivery to the person to whom it is payable, the counter-signature of the county treasurer in his own personal handwriting. While the county clerk, perhaps, could not forge an order by signing his own name where his signature, alone, was all that was required to make a valid, genuine order entitled to payment by the treasurer, no reason suggests itself or has been suggested why it would not be forgery for him to draw the order bearing his own genuine signature and the false and forged signature of the treasurer. The motion to quash was properly overruled.

The question therefore arises on the record, Does the evidence prove the defendant guilty of forgery? This brings us back to the same question attempted to be raised on the motion to quash. There is no claim that the county board ever made an order authorizing the payment of the money to the defendant out of the treasury. The defendant, therefore, had no authority to draw the order and the treasurer none to countersign it. It was introduced in evidence on the trial. It bore on its face the words, "Countersigned W. C. Winkler, County Treasurer." The defendant testified that he issued the warrant and had it countersigned by the county treasurer, and that Eva Black countersigned it. Eva Black testified that she was a clerk in the county treasurer's office prior to December 1, 1930, and since has been county treasurer; that the order was countersigned by Walter C. Winkler; that it was a *fac simile* of his signature placed there with a stamp; that she could not say that as a clerk in the office she placed the countersign there or that she did not; that she does not know and there is no way of identifying who did it; that she countersigned a lot of warrants but does not recollect signing any particular one, and that orders were not registered when they were countersigned.

Three elements are essential to forgery: a false writing or alteration of an instrument, an intent to defraud, and the instrument as made must be apparently capable of defrauding. (*Goodman* v. *People,* 228 Ill. 154; *People* v. *Pfeiffer,* 243 id. 200.) The first of these elements is lacking in this case. The instrument is not a false writing. It is genuine—a county order drawn by the proper official to draw county orders and accepted or countersigned by the proper official for that purpose. It was irregularly drawn and irregularly countersigned, but it made no false representation as to its character. The mere drawing and countersigning of it may have amounted to a misrepresentation that the drawing by the clerk and countersigning by the treasurer were within their lawful authority, but such a misrepresentation of their authority would not make them, or either of them, guilty of forgery. Each of them certainly exceeded his authority—the one in drawing and the other in countersigning a county order—but they did not forge one.

"The term 'falsely,' as applied to making or altering a writing in order to make it forgery, does not refer to the contracts or tenor of the writing or the facts stated therein but implies that the paper or writing is not genuine—that in itself it is false or counterfeit. To constitute forgery there must be the making of a writing which falsely purports to be the writing of another person or to be genuine or authentic." (12 R. C. L. 144, par. 7.)

The difference between falsely making a writing, note, check, draft, or order, warrant or request for the payment of money or delivery of goods or other thing, and the making of a false writing, note, check, draft, or order, warrant or request for the payment of money or delivery of goods or other thing, has been illustrated in many adjudicated cases. In *Territory* v. *Gutierrez,* 13 N. M. 312, the indictment was for unlawfully, feloniously and falsely on April 7, 1903, making, with intent to injure and defraud,

a certain certificate of a notary public in relation to the acknowledgment by Jesus Maria Sandoval and his wife of the execution of a deed of real estate on August 4, 1900, well knowing that Sandoval and wife did not appear before the defendant and make any acknowledgment of said deed on August 4, 1900. The indictment was drawn under a statute similar in its terms to section 105 of our Criminal Code. It was held that the court properly sustained a demurrer to the indictment, the court saying that the question presented was whether a notary public who makes a certificate of acknowledgment of a deed or other instrument the contents of which are untrue, is guilty of falsely making a certificate which may be received as legal proof under the statute, and that there was a distinction between falsely making a certificate of acknowledgment and making a false certificate, the former indicating a certificate which was not genuine, and the latter one which was not true but false. Two Federal cases cited in the opinion fully sustain this conclusion. *United States* v. *Glasener,* 81 Fed. 566; *United States* v. *Moore,* 60 id. 739.

In *State* v. *Young,* 46 N. H. 266, the defendant was indicted under a statute similar to ours for having falsely made entries in his own books and it was held there was no forgery, the court saying: "The paper is just what it purports to be; it is the statement of the man who made it; it is a true writing or paper, though the statement it contains may be false."

In *State* v. *Taylor,* 46 La. Ann. 1332, it was held that an apparent agent is not guilty of forgery though he had no authority in fact, the court in the opinion saying: "We are persuaded, after an examination of a number of authorities, that an instrument which shows on its face that the person signed as agent of the drawer of a note cannot be the subject of forgery. The act has not one of the essentials of the crime of forgery—a false making of an instrument apparently genuine. The falsehood, if there is

falsehood, is in the agency—in assuming to act as agent—and not in forging an instrument." (*People* v. *Bendit,* 111 Cal. 274; *State* v. *Kinder,* 315 Mo. 1314.) There are many such cases. (*Mann* v. *People,* 15 Hun, 155, affirmed by the Court of Appeals, 75 N. Y. 484.) In this case the instrument claimed to be a forgery was an obligation of the county for the payment of money executed by a county official in his own name as the county's official representative.

In *Commonwealth* v. *Baldwin,* 11 Gray, 197, Baldwin signed the instrument in question, "Schouler, Baldwin & Co.," saying in answer to an inquiry that the members of the firm included himself and Schouler, although there was no such partnership and the act was done with intent to defraud, but it was held that Baldwin was not guilty of forgery, the party taking the instrument knowing that the signature was not the personal act of Schouler by seeing Baldwin execute it and relying on his statement to bind Schouler as a partner.

In *Goucher* v. *State,* 113 Neb. 352, the defendant was indicted for aiding and abetting Arthur S. Allen, the county clerk, in the forgery of a county warrant. The theory of the prosecution was that the warrant was forged by Allen and that the defendant aided and abetted in the commission of the forgery. If Allen did not commit a forgery the defendant could not be guilty of aiding and abetting him in the commission of that crime, and the court directed its attention to the question of Allen's guilt of the crime of forgery. It was stated that the statute declared the false making of the instrument to be an essential element of forgery; that the genuine making of a false instrument is not generally a forgery, and this is the usual interpretation of the courts unless otherwise provided in the statutes themselves; that the decisions are nearly unanimous that the making of a false instrument is not within a criminal statute directed against the false making of an instrument. The essence of a forgery is the making of a false writing

with the intent that it shall be received as the act of another than the party signing it. Forgery cannot be committed by the making of a genuine instrument though the statements made therein are untrue. The words "whoever falsely makes," generally apply to the false making of the writing as distinguished from the contents of the instrument itself. A check bearing the genuine signature of the maker, though drawn on a bank in which the maker has no money or credit, with the intention of cheating the payee or the bank, is not a forgery. For the same reason the warrant or note of a county, if the making is genuine, is not a forgery though the instrument itself is false and intended as a means of defrauding the county or the payee. In discussing the evidence it was said: "In the making of the warrant a partially printed genuine form in general use for lawful county purposes was used. The genuine signature of Allen, as county clerk, appears on the warrant in the proper place. The signature of the county commissioner who approved the warrant is likewise genuine. These are the officers charged by law with the duties which they assumed to perform. There was no false making whatever within the meaning of the forgery statute. The instrument itself was shown to be false, but the false making against which the statute is directed is not shown. There is therefore no evidence of a forgery."

In *DeRose* v. *People*, 64 Colo. 332, Charles DeRose was charged with feloniously and falsely making and forging a certain order, warrant and request for the payment of money by the Denver and Rio Grande Railroad Company, to-wit, a certain railway time-roll, and feloniously uttering, publishing, passing and attempting to pass as true and genuine a certain false order, warrant and request for the payment of money by the Denver and Rio Grande Railroad Company, to-wit, a railway time-roll, with intent to damage and defraud the company. On a motion for a bill of particulars the prosecution furnished the defendant with a

copy of the instrument alleged to have been forged, which was a time-sheet or railroad time-roll containing the names of men who worked on the Tennessee-pass section, the time they worked and the rate and amount of compensation due each for the month of December, 1915, which the defendant, as section foreman, made and certified as correct and sent in to the roadmaster. The evidence showed that the defendant was a section boss or foreman on the Tennessee-pass section; that a part of his duties was to make out and send in the time-roll of the men who were working for him on the section, at the end of the month; that he "padded" the time-roll for the month of December, 1915, by crediting Albert DeRose with more days than he had worked during that month. The customary method of paying section men was for the foreman to make out the time-roll at the end of the month, certify it as correct and send it to the office of the roadmaster, where it was checked over, countersigned, and sent to the superintendent's office as the basis of the pay-roll. The time-roll remains in the superintendent's office, and the pay-roll is made up from it and sent to the treasurer's office in Denver, from which office the pay checks, when written, are sent to the men whose names appear on the roll. In this instance the fraud was discovered in the roadmaster's office before the pay-roll was made up. The defendant was convicted of forgery and sentenced to a term in the penitentiary, but the Supreme Court of Colorado in reversing the judgment said: "This writing is what it purports to be—a true and genuine instrument—although it contains false statements. It is not a false paper and the execution of such a document does not constitute forgery. The prosecution failed to distinguish between falsely making an instrument and making a false instrument, and this paper was not falsely made or forged. To forge or counterfeit an instrument is to falsely make it. The term 'falsely make,' as used in the statute, refers to the paper itself as being false and not to the truth

314

or falsity of its statements. The statute refers to the false making or altering and not to the tenor of the writing or the facts stated therein. A false statement of fact in an instrument which is itself genuine, by which another person is deceived and defrauded, is not forgery. * * * So in this case, defendant, when he made up and signed the time-roll, did not make a false writing. The document itself is genuine, and the fact that he made a false statement in the writing does not constitute the crime of forgery." The judgment of the court was therefore reversed.

The evidence does not show that the defendant is guilty of the crime of forgery, and the judgment is therefore reversed.

*Judgment reversed.*