THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK YOUNG, Defendant-Appellant.

(No. 11855;

Fourth District—May 14, 1974.

Kenneth L. Gillis, of State Appellate Defender's Office of Chicago, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (Wayne Golomb, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE SMITH delivered the opinion of the court:

Defendant was indicted for forgery and a violation of the Illinois Business Corporation Act—section 439.41 (Ill. Rev. Stat. 1971, ch. 32, par. 119), pledging fraudulent stock. Following conviction on both charges, probation was denied, and he was sentenced to 1 to 5 years, though, the court failed to specify on which conviction the sentence rested. On appeal, he asserts that the indictment is void, failure of proof as to specific intent, that the instrument involved was in fact forged, prejudicial argument, and severity of the sentence.

The forgery count read that defendant "with intent to defraud, knowingly delivered * * * a forged document apparently capable of de-

frauding another, to-wit: a stock certificate", copy attached, defendant "knowing said stock certificate to have been thus made." Invalidity is premised on the failure of this count to specify how the certificate was a 'forged document apparently capable of defrauding another". Defendant argues that the indictment should point out, in the words of the statute, whether "it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority; * * *." Ill. Rev. Stat. 1971, ch. 38, par. 17—3 (a)(1).

True, the subject matter of forgery must be a document altered or made and capable apparently of defrauding another "in such a manner that it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority." The bill of particulars identified the certificate as a forgery in that it "purports to have been made by authority of 'the said Corporation', which did not give such authority." In other words, defendant argues that the indictment failed to answer the question as to what type of forged document was involved—and thus, left him in the dark and "prevented adequate preparation of his defense because he was not sufficiently notified of the charge against him."

■■ We view the alternatives descriptive of forgery as nondefinitional insofar as the definition of forgery is concerned. Such alternatives are by way of example—exemplative. Forgery, as we know, is a false making or alteration of an instrument which is apparently capable of defrauding another and made or altered with an intent to defraud, or, the issuance or delivery of a forged document "knowing it to have been thus made or altered"—being subsection (2) of the forgery statute. The general rule is that an indictment which charges an offense in the language of the statute is deemed sufficient if such language particularizes the offense so that the accused is apprised of what the charge it. Defendant cites *People v. Leach*, 3 Ill.App.3d 389, 279 N.E.2d 450—where the charge was "mob action". But that case is clearly distinguishable from this, for the charge there failed to take any account of the mental state required for there to be a crime. In *Leach* it is pointed out correctly that where a statute does not describe the acts which constitute the crime or by its generality it may embrace conduct which the statute does not cover, greater specificity is required. But the forgery statute does define—particularize—the elements of forgery—thus a charge which uses the same language is valid. Here, the charge was that defendant delivered a forged document with intent to defraud—whether it was made by another or with different provisions, or by the one who did not give such authority, are simply aspects of what might compromise a forged docu-

ment. These aspects need not be set out in the charge. This being so, the count for forgery was sufficient.

The second count was based on the Illinois Business Corporation Act which makes it a crime to "knowingly and designedly pledge * * * any false, fraudulent or simulated certificate * * * of any share or shares * * *". The charge here was that defendant "knowingly and designedly, and with intent to defraud another person, * * * pledged a false, fraudulent and simulated certificate of ownership of shares in capital stock of a corporation * * *", a copy being attached. Defendant objected to the conjunctive "and" in the indictment since the statute uses the disjunctive "or", and again, argues that the indictment fails to describe in what manner this certificate was false, fraudulent and/or simulated.

■■ Taking the latter argument first, the reasons for holding the forgery count valid are likewise applicable here. Again, *Leach* is cited for the argument that since the statute does not "particularize", an indictment in the language of the statute would therefore be void. But, to us the words "false, fraudulent [and/or] simulated" are particularization enough—so that this charge, being in the language of the statute, is sufficient. Because "simulated" was made conjunctive with "fraudulent", instead of reading "false, fraudulent or simulated" is not an argument addressed to any infirmity we know of in framing a charge. Indeed, the older cases looked askance at the use of the disjunctive "or", characterizing such usage duplicitous—meaning, if we read them aright, that there should be two counts instead of one. At this juncture we are reminded of Mr. Justice Holmes' observations in *Paraiso v. United States*, 207 U.S. 368, 52 L.Ed. 249, 28 S.Ct. 127:

> "The bill of rights * * * giving the accused the right to demand the nature and cause of the accusation against him, does not fasten forever upon those islands the inability of the 17th century common law to understand or accept a pleading that did not exclude every misinterpretation capable of occurring to intelligence fired with a desire to pervert."

Defendant argues that there is no proof of a specific intent to defraud the person to whom the certificate was pledged. The certificate, as it turns out, was worthless—being a duplicate of another certificate of the corporation bearing the same number. The imposture was discovered when the certificates were being exchanged for the stock of another corporation. This simple fact, standing alone, raises an inference of an intent to defraud. We agree with defendant, that specific intent cannot "be presumed"—but it can certainly be inferred or to put it another way —an act can imply a specific intent. It would be an oddity in most cases

for there to be direct evidence as proof of intent. Rather, triers of the fact of necessity must look to the surrounding circumstances and if the inferences are reasonable, as to its existence, triers of the fact can so find, and reviewing courts will not question the drawing of such inference. Defendant argued at length that the State's case was not credible, but, as always, we must reply that such was not for us but for the jury. It is no argument for reversal to assert that if defendant's remembrance of things past was correct then he should have been acquitted, because these same triers of the fact can view his testimony as incredible and the State's as credible. Of course they need not do so, but that is what juries are for. The argument that this was a mere "over-issuance" and not a deliberate forgery—purporting to have been made on the authority of one who did not give such authority—while supported by the evidence—defendant's testimony—contrariwise it is not supported by the evidence of the State. Coupled with this supposititious certificate were others, used by defendant at other times and places. These occurrences are circumstances indeed from which a jury could infer specific intent. In this context, it would not be amiss to note an admission of defendant himself in regard to this certificate. One of the officers for the bank who was acting as transfer agent accosted defendant with regard to whether he had means of redeeming this certificate, and defendant replied that he had done "this" because "he needed the money". The fact that defendant denies such conversation, again, is for a jury to believe or not to believe.

■■ Defendant asserts that the certificate in question was not a forged document, saying, "Falsely making a document is different from making a false document." In other words, if the instrument is genuine, issued without authority, there is no forgery. This argument might have some force if *People v. Kramer*, 352 Ill. 304, 185 N.E. 590, still held as a precedent. But it does not. *Kramer* was reexamined in *People v. Kubanek,* 370 Ill. 646, 19 N.E.2d 573, and quietly put to rest in *People v. Mau*, 377 Ill. 199, 36 N.E.2d 235:

> "We reexamined the case of *People v. Kramer*, 352 Ill. 304, 185 N.E. 590, and overruled that decision because *Kramer* was acting in a ministerial capacity as agent of Marion county, Illinois, of which he was the county clerk, and exceeded his authority by drawing a county order payable to himself for a debt that did not exist. The *Kramer* decision contained no discussion of the fact that *Kramer* exceeded his authority with intent to defraud his county." (377 Ill. at 205-206.)

Accordingly, the fact that defendant was president of the corporation authorized to sign the certificate in question, and assuming the signature

of the secretary to be genuine—defendant possessed blank certificates signed by the secretary—does not negate a basis for a conviction for forgery or pledging a false, fraudulent and simulated certificate if such was done without authority being given—here, by the corporation. Books and records of the corporation were in evidence, and it was apparent that the certificate which was the subject matter of the indictment was issued without authority of the corporation.

Next, defendant says that the argument was prejudicial. It is hardly that, even if we assume that it was not supported by the evidence—which, in our opinion, is not the case. The stock certificate is dated 1958. In argument, it was suggested that when defendant needed money, "happened to be in a pinch * * * he had these blank certificates"—and used them for collateral, and:

> "Well, I suggest to you what happened ladies and gentlemen, he didn't have the books and records after 1959, but he had these blank certificates and the reason that this came out on the seventh of December was that he didn't remember the facts exactly when the various things happened. He knew it was about this time so well he put that date in."

It is true, as defendant suggests, that the only evidence with regard to issuance—direct evidence, that is—was the date on the certificate itself, 1958, and defendant's testimony that it was issued in December of that year to another individual for promotional recompense. However, since he owed defendant some money, to "eliminate a step" defendant had it issued to himself. But in this context, we must keep in mind, that the stock was pledged as collateral for a loan in 1967. Accordingly, there is an inference in this act that the date was then inscribed and maybe defendant's signature, too. Obviously, in whatever year he did it, the year 1958 had to be used to lend versimilitude to the certificate, if for no other reason, than that the authorized stock of 250,000 shares had been reported as issued to the Secretary of State prior to December 31, 1958. Accordingly, the argument was based on reasonable inferences to be drawn from all the circumstances, but even if not, the argument can hardly be characterized as prejudicial. Defendant's counsel must have thought so, too, because no objection was made.

The argument that the State did not prove that the stock certificate was issued without authority of the corporation simply doesn't stand up and this for the reason as previously suggested with regard to intent. The appropriate officer of the bank handling the transfer stated that an examination of the books and records did not reflect the issuance of this certificate. This fact standing alone—unrebutted, except by testimony of defendant—raises an inference of non-authority. Because defendant

views lack of knowledge on the part of the officer that the books so examined constituted all the books and records goes to the weight of his testimony, and that, as we have pointed out before, was something for the jury to weigh and it is not for us to gainsay them.

■■ The charges in this case grew out of one transaction. Both charges were submitted to the jury and he was found guilty of both. However, the judgment order under which the defendant was sentenced, as we have seen, failed to specify the offense or offenses for which he was sentenced. Only one sentence could have been imposed for the two offenses. The trial court should have specified the offense for which the sentence was imposed. *People v. Brown*, 52 Ill.2d 94, 285 N.E.2d 1.

■■ Finally, defendant says that his motion for probation should have been granted and that the sentence he received was improper under the circumstances. Forgery carries 1 to 14 years and 1 to 10. Thus the sentence can hardly be characterized as excessive. Nor can we review the order denying probation unless we can say from all the circumstances that its denial resulted either from a failure of the trial court to exercise discretion or such was exercised in an arbitrary manner. (*People v. Saiken,* 49 Ill.2d 504, 73 N.E.2d 381.) But here, the application for probation was investigated, the defendant presented witnesses on his behalf, and we cannot say that it acted arbitrarily. The defendant was an attorney, well versed in business matters and the flagrant use of a forged document to collateralize a loan is an act of criminal conduct not to be lightly viewed.

■■ Accordingly, we affirm the judgment of the trial court finding the defendant guilty of the offense of forgery, and modify the judgment of the trial court to specify that the sentence is for the crime of forgery only, and the circuit clerk is directed to enter such modification.

Judgment modified and affirmed, and remanded with directions.

TRAPP and SIMKINS, JJ., concur.