713 P.2d 1008

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Francis Thomas DEUTSCH,
Defendant-Appellant.**

No. 8355.

Court of Appeals of New Mexico.

Dec. 31, 1985.

Certiorari Denied Feb. 5, 1986.

John J. Kelleher, Franchini, Henderson & Wagner, Gene Franchini, Franchini, Henderson & Wagner, Albuquerque, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., Peter S. Kierst, Barbara F. Green, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

This appeal involves convictions and sentences of Deutsch for conspiracy, larceny, fraud, embezzlement and forgery in two criminal cases—Bernalillo County District Court Cause Nos. 37206 and 37738. We (1) state the factual background; and discuss (2) enforcement of a plea bargain; (3) the prosecutor's allegedly late disclosures; (4) interception of Deutsch's personal mail; (5) testimony from Deutsch's attorneys; (6) testimony of a questioned documents examiner; and (7) sufficiency of the evidence for the forgery convictions.

### FACTUAL BACKGROUND

Deutsch was the sole stockholder of E.F.D. Capital Group, Inc., a New York corporation (EFD). In the spring of 1983, EFD purchased all the stock of two New Mexico corporations, Continental Mortgage, Inc. (Continental), and Guaranteed Equities, Inc. (Guaranteed). According to Deutsch, Continental and Guaranteed were operated as a single mortgage brokering business. According to Deutsch, "all three corporations were treated as the sole proprietorship of Deutsch commencing in or about May, 1983."

In the summer of 1983, the Financial Institutions Division of the Regulation and Licensing Department (FID) investigated financial activities involving Guaranteed. On August 19, 1983, FID brought a civil suit in Santa Fe County District Court seeking various items of relief. A temporary solution was negotiated. An order was entered September 26, 1983, which, among other things, appointed Harold Douglass as trustee of Guaranteed.

On September 28, 1983, the indictment in Cause No. 37206 was filed. The indictment named Deutsch and Continental as defendants and charged both conspiracy to commit fraud and fraud. Both Deutsch and Continental entered plea agreements. Deutsch's agreement, dated September 29, 1983, provided that no additional criminal charges would be filed relating to any *past* criminal activity involving Deutsch, Continental, Guaranteed, EFD, or affected companies in connection with the conduct of those businesses in New Mexico, their assets, liabilities and contracts.

On February 14, 1984, the indictment in Cause No. 37738 was filed. The indictment named Deutsch as a defendant and charged various crimes in seventeen counts. All counts charged criminal activity *subsequent* to the plea agreement of September 29, 1983. Two of the charges were dismissed; Deutsch was convicted of fifteen counts.

The transactions involved in the fifteen convictions in Cause No. 37738 are:

(a) Eloy Romero loan. The loan was refinanced. An Omega Funding Corporation (Omega) check in the amount of $31,240.44 was made payable to Guaranteed. This check was endorsed with the name of Guar-

anteed and the initials "F.D." On the basis of this endorsement of Omega's check, First Interstate Bank issued its cashier's check in the same amount, payable to Guaranteed. The cashier's check was endorsed in the name of Guaranteed, "F. Deutsch, president" and was cashed at a truck plaza in New Jersey. Deutsch was convicted of larceny of the Omega check, forgery on the basis of the endorsement of the Omega check, and forgery on the basis of the endorsement of the cashier's check. These were counts Nos. 1, 2 and 3.

(b) Canaday loan. Attorneys Prelo and Grodner foreclosed this loan on behalf of Guaranteed. At a foreclosure sale, Guaranteed bought the property securing the loan. Canaday found a buyer to redeem the property and Guaranteed agreed to sell to the buyer. Prelo and Grodner handled the matter; they issued their trust account check, in the amount of $40,155.43, payable to Guaranteed. Deutsch picked up the check from Prelo. The check was endorsed in the name of Guaranteed, "Frank Deutsch, pres." and was cashed at the truck plaza in New Jersey. Deutsch was convicted of fraud and forgery. These were counts Nos. 4 and 5.

(c) Garcia and Rael loans. When Grodner (see (b) above) noticed the endorsement on the trust account check, he questioned Deutsch about it. Deutsch said he would straighten things out and later gave Grodner three checks. Two of these three checks involved the Garcia and Rael loans. Omega issued its check for $22,592.80, payable to Guaranteed, as a pay-off of the Garcia loan. The Omega check was endorsed in the name of Guaranteed, "F. Deutsch, Pres." and exchanged for a New Mexico Federal Savings & Loan Association (N.M. Federal) check in the same amount. Deutsch delivered the N.M. Federal check to Grodner as part of the pay-off of the Canaday loan. Deutsch was convicted of embezzlement and forgery in connection with the Omega check. These were counts Nos. 13 and 14. Tucumcari Federal Savings & Loan Association issued its check in the amount of $13,956.68, payable to Guaranteed, as a pay-off of the Rael loan. Deutsch delivered this check to Grodner as part of the pay-off of the Canaday loan. Deutsch was convicted of larceny of this check. This was count No. 15.

(d) Haws loan. A bank in California issued its check in the amount of $22,749.73 to pay off this loan. The check was payable to Guaranteed, "Harold Douglass Trustee." The check was endorsed in the name of Guaranteed and in the name of the trustee, "H. Douglass, Trustee," and underneath the purported Douglass signature, "F. Deutsch Pres." The check was cashed at the truck plaza in New Jersey. Deutsch was convicted of larceny and forgery. These were counts Nos. 6 and 7.

(e) Torres loan. Torres had overpaid his loan and wanted reimbursement for the overpayment. The records of the trustee did not show that the loan had been paid off. Territorial Abstract & Title Co., Inc. (Territorial) had handled the transaction. The trustee checked with Territorial; it provided the documentation. The exhibit, which is an attachment to another exhibit, is of poor quality and is difficult to read. However, there was testimony that Territorial had issued its check No. 6247 in the amount of $12,398.00 payable to Guaranteed. The check had been endorsed in the name of Guaranteed, "F. Deutsch, Pres." and was cashed at the truck plaza in New Jersey. Deutsch was convicted of larceny and forgery. These were counts Nos. 8 and 9.

(f) Radaelli loan. Omega issued its check in the amount of $89,005.00 as a pay-off of this loan. The check was payable to Guaranteed. The Omega check was endorsed in the name of Guaranteed, "F. Deutsch, Pres." and exchanged for a N.M. Federal check payable to Guaranteed. The N.M. Federal check was endorsed in the name of Guaranteed, "F. Deutsch, Pres." and was cashed at the truck plaza in New Jersey. Deutsch was convicted of embezzlement and two counts of forgery. These were counts Nos. 10, 11 and 12.

The foregoing outlines the transactions and the convictions in Cause No. 37738.

There is evidence that Deutsch lacked authority to negotiate checks payable to Guaranteed during the time period involved. There is evidence that Deutsch executed releases on deeds of trust given in connection with some of the loans, but was without authority to do so. There is testimony from Mr. Yudis, who arranged the check cashing in New Jersey, about Deutsch's promise to "arrange" a vacation for Yudis so that he could avoid testifying. Yudis was subpoenaed and testified under a grant of immunity.

Deutsch does not challenge the sufficiency of the evidence for his larceny, fraud and embezzlement convictions in Cause No. 37738.

## ENFORCEMENT OF PLEA BARGAIN

The plea bargain agreement in Cause No. 37206 provided that the sentence would be as provided by law but would not be imposed until sixty days after the completion of an audit of Guaranteed in connection with the civil case.

After the indictment in Cause No. 37738 was returned, Deutsch moved for enforcement of an agreement between the Attorney General, Deutsch and his attorney, which was executed contemporaneously with the plea bargain. This agreement provided that if Deutsch complied with the court order in the civil suit *and* if investors on some forty-five identified loans had been repaid, "the State will recommend to the sentencing court that the defendant be placed on probation." An alternative to repayment of the investors was an approved repayment plan. We do not concern ourselves with repayment or a plan for repayment because neither matter if Deutsch did not comply with the order in the civil suit. This is because "and" in the agreement is used in the conjunctive. *See Davis v. Savage*, 50 N.M. 30, 168 P.2d 851 (1946).

Deutsch contends that at the hearing on Deutsch's motion to enforce the agreement, the evidence was uncontroverted that he complied with the agreement except to the extent that the state's interference made compliance impossible. This argument ignores the result of the hearing. The trial court stated that it would wait to see what happened in Cause No. 37738 before deciding whether Deutsch complied with the agreement.

■ After the convictions in Cause No. 37738, sentence was imposed in Cause No. 37206. At the time of sentencing, the evidence showed that Deutsch had not complied with his agreement. In the civil suit, the court appointed Douglass as trustee with total control over all receipts and disbursements of Guaranteed and ordered Deutsch not to take any action interfering with or impeding the trustee. The facts leading to the convictions for larceny, fraud and embezzlement established noncompliance with the orders in the civil suit. Deutsch was not entitled to probation in Cause No. 37206, and the prison sentence in Cause No. 37206 was not contrary to the agreement.

## ALLEGED LATE DISCLOSURE BY THE PROSECUTOR

In Cause No. 37738, Deutsch contends the trial court erred in denying his motion for a hearing or alternatively for dismissal of the charges. The motion claimed late and incomplete discovery which amounted to prosecutor misconduct.

On the morning that trial began, the prosecutor produced four tapes. When one of Deutsch's counsel, on the following day, went to the Attorney General's office in Albuquerque to review the four tapes, ten more tapes were produced.

Deutsch's counsel contended the prosecutor did not know how many tapes there were. The prosecutor contended he had made the tapes available but that no defense counsel listened to the tapes in advance of trial and did not get around to listening to the tapes until the trial was underway. The trial court refused to hear evidence on the conflicting contentions. It is not disputed that discovery of documents had been completed prior to trial, that this discovery included offense reports, and these reports referred to the tapes.

Deutsch asserted that a hearing was necessary to show the prosecutor was surprised at the number of tapes.

We need not decide whether the trial court erred in not conducting an evidentiary hearing and in not making a specific ruling on whether there had been a discovery violation by the prosecutor.

■ When the issue of late discovery was raised, the trial court stated it would rule later. At the end of the trial day, the trial court excused the jury for the next day (Friday), thus giving the defense a three-day weekend to listen to the tapes and do other preparation as deemed necessary. On the following Monday, the trial court asked the defense how Deutsch had been prejudiced. The defense replied that it had already cross-examined Douglass and would have cross-examined him on the basis of the contents of the tapes. The trial court ordered that Douglass return to the witness stand, and the defense cross-examined him extensively.

Remedies for violation of discovery rules or orders are discretionary with the trial court. *State v. Johnson*, 91 N.M. 148, 571 P.2d 415 (Ct.App.1977). If there is a violation, Deutsch is not entitled to relief unless he has been prejudiced by the violation. *State v. Perrin*, 93 N.M. 73, 596 P.2d 516 (1979); *State v. Manus*, 93 N.M. 95, 597 P.2d 280 (1979).

Assuming, but not deciding, that there was a discovery violation, the trial court provided a remedy for the claimed prejudice; the cross-examination took place. *See State v. Pedroncelli*, 97 N.M. 190, 637 P.2d 1245 (Ct.App.1981). There being no other claim of prejudice, the trial court did not err in its disposition of Deutsch's discovery claim.

## INTERCEPTION OF PERSONAL MAIL

An issue at the trial of Cause No. 37738 was whether Douglass, the court-appointed trustee, had intercepted or caused to be intercepted, the personal mail of Deutsch.

There is evidence that Douglass discovered that checks intended for Guaranteed were being intercepted and cashed with an endorsement purporting to be that of Deutsch. Douglass instituted tighter control over the mail. Douglass admitted that he ordered *all* mail addressed to Guaranteed be opened even if Deutsch was also an addressee. Douglass denied, but other witnesses affirmed, that Douglass ordered the interception of all mail, including mail addressed only to Deutsch.

Deutsch asked for a hearing on tainted evidence. Because there was no such hearing in the trial court, Deutsch contends that all convictions in Cause No. 37738 must be reversed. Deutsch states: "Having made a prima facie showing that Douglass made an illegal search of his personal mail, Appellant was entitled to an evidentiary hearing at which the burden of proof should have been placed on the State to prove that their case was untainted."

■ Deutsch relies on *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939). We agree that *Nardone* is controlling authority; however, Deutsch misreads that decision. Deutsch contends that only two steps are involved in deciding the question of evidentiary taint; that once there was evidence of taint then the prosecutor must prove the absence of taint. This is incorrect. Once there was evidence of taint (the first step), then defendant had the opportunity to prove that a substantial portion of the case against a defendant was a fruit of the taint (the second step). Only after a defendant has satisfied the second step does the burden shift to the prosecutor. *Nardone* states:

The burden is, of course, on the accused in the first instance to prove to the trial court's satisfaction that * * * [Deutsch's mail was unlawfully intercepted]. Once that is established * * * the trial judge must give opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree. This leaves ample opportunity to the Government to convince the trial court that its proof had an independent origin.

\* \* \* [C]laims that taint attaches to any portion of the Government's case must satisfy the trial court with their solidity \* \* \*.

The trial court assumed, but did not decide, that step one was satisfied, that there was proof of unlawful action. The trial court inquired as to step two. Deutsch responded that the opening of his personal mail led to knowledge by the state concerning personal affairs such as travel, other business dealings and other lawsuits. Deutsch could not state, and made no tender, that knowledge of his personal affairs had anything to do with the trial. Rather, Deutsch contended that he could not know whether any portion of the case against him was tainted without a hearing, and that the entire investigation was tainted. However, Deutsch did not disagree when the prosecutor responded that the most important part of the case was the checks; Deutsch never claimed that the checks were tainted evidence.

Deutsch did not satisfy his burden as to step two; the burden never shifted to the prosecution to prove that its case against Deutsch was based on untainted evidence. The trial court did not err in failing to conduct the requested hearing, there being an insufficient showing of taint to invoke a further hearing.

## TESTIMONY FROM DEFENDANT'S ATTORNEYS

Deutsch contends the indictment in Cause No. 37738 should have been dismissed because of the use of testimony by Deutsch's attorneys. This issue involves two sets of attorneys: (a) Prelo and Grodner, and (b) King.

(a) Prelo and Grodner

These attorneys testified to events in connection with the Canaday loan, a matter that they handled on behalf of Guaranteed. Deutsch does not attempt to demonstrate that they were his attorneys, so that an attorney-client relationship might exist. Deutsch assumes they were his attorneys. We made the same assumption because the trial court's ruling was not on the basis of the existence of an attorney-client relationship. However, because of the trusteeship, *see Commodity Futures Trading Commission v. Weintraub,* —— U.S. ——, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).

Deutsch complains of the testimony of these attorneys before both the grand jury and the trial jury. It is not necessary to consider the different functions of the two juries in order to decide this issue. However, *see Buzbee v. Donnelly,* 96 N.M. 692, 634 P.2d 1244 (1981).

Assuming there was an attorney-client relationship, there was no attorney-client privilege. NMSA 1978, Evid.Rule 503(d)(1) (Repl.Pamp.1983) states there is no privilege under this rule, "[i]f the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud[.]" Deutsch was convicted of fraud in connection with the attorneys' trust account check, and convicted of embezzlement and larceny on the basis of his efforts to cover up the fraud. The attorney services involved were obtained to enable Deutsch to commit the crimes.

Deutsch does not seriously contend that an attorney-client privilege existed. Rather, he contends the attorneys breached an ethical obligation to him by testifying. Deutsch relies on the American Bar Association Model Code of Professional Responsibility. Canon 4 of that Code is similar to New Mexico's Code of Professional Responsibility, NMSA 1978, Code of Prof. Resp. Rule 4–101(B) (Repl.1985), which states, as a general proposition, that a lawyer shall not knowingly reveal a confidence or secret of his client. Deutsch also relies on the discussion of ethical considerations in the American Bar Association Code. That discussion is to the effect that the ethical consideration is more extensive than the privilege. In sum, Deutsch's argument is that the ethical consideration of not revealing a client's secrets barred the testimony of the attorneys even though no attorney-client privilege applied to their testimony.

Assuming, but not deciding, that ethical considerations might bar the testimony of the attorneys under the facts of this case, what follows from a violation? Deutsch contends the violation denied him due process of law and the effective assistance of counsel contrary to both the federal and state constitutions. The trial court invited authority in support of this claim; none was supplied. The contention is renewed in this court, again without citation of authority.

An issue raised on appeal will not be reviewed if the issue is not supported by cited authority. In this situation, we assume an absence of supporting authority. *In Re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984); *see State v. Callaway,* 92 N.M. 80, 582 P.2d 1293 (1978). Further, Deutsch, as appellant, had the burden of demonstrating prejudicial error. *See State v. Pruett,* 100 N.M. 686, 675 P.2d 418 (1984). Quite apart from the absence of supporting authority, Deutsch makes no effort to demonstrate that the testimony of an attorney handling a civil matter deprived him of due process in this criminal case or deprived him of effective assistance of counsel in this criminal case.

(b) King

Attorney David W. King, on behalf of Deutsch, wrote a letter to the trial judge in the civil suit, stating that some $200,000.00 in checks payable to Guaranteed had been sent to New York and there endorsed by Deutsch's employees. The letter specifically refers to the Torres loan, one of the transactions involved in Cause No. 37738. According to the letter, this was all a big mistake.

■ Deutsch asserts the trial court erred in permitting King to testify that he wrote the letter and to authenticate his tape-recorded conversation with Deutsch, which was the basis for the letter. Deutsch argues that the tape and the letter were "sensitive and confidential" communications not within the crime exception to the attorney-client privilege. *See* Evid.R. 503(d)(1). This argument is irrelevant. The trial court admitted the testimony and

the tape on the basis that there was no confidential communication because the communication was intended to be disclosed to third persons, *see* Evid.Rule 503(a)(4), and, therefore, the communication was not privileged, *see* Evid.Rule 503(b). The trial court's ruling was correct. The letter was addressed to the trial judge in the civil suit, with copies to other persons. The tape was made for the purpose of preparing the letter.

■ Deutsch also contends the admission of the letter and tape was error because the prosecutor, in closing argument, wove "sinister arguments" around them. We assume the claim alleges prosecutor misconduct. There was no misconduct. The contents of the letter could be considered as a self-serving exculpatory statement. If, as Deutsch contends (there are no transcript references and we have not looked up the arguments), the prosecutor characterized the letter as "a tissue of lies designed to dupe the attorney into helping [Deutsch] cover his criminal tracks," such was not misconduct but a permissible view of the evidence. *See State v. Venegas,* 96 N.M. 61, 628 P.2d 306 (1981).

## TESTIMONY OF A QUESTIONED DOCUMENTS EXAMINER

This issue goes to the endorsements on the checks in Cause No. 37738. A questioned documents examiner, stipulated to be an expert witness, testified that two of the endorsements were "probably" signed by Deutsch, that three may have been signed by Deutsch, and that she could not make any identification of two endorsements. (This does not add up to the eight endorsements involved, but this is all the parties discuss.)

The examiner attributed her lack of certainty to the poor quality of the exemplars provided for purposes of comparison. Deutsch provided exemplars in October 1984, but they were insufficient for purposes of comparison. Deutsch provided additional exemplars in November 1984. The examiner testified the November exemp-

lars were worthless because they were an attempt by Deutsch to disguise his natural handwriting.

Deutsch contends the examiner's testimony concerning the November exemplars was improperly admitted, for two reasons.

(a) Qualifications of the Examiner

Deutsch asserts that the testimony about disguised exemplars was beyond the expertise of the examiner. He asserts the examiner's expertise was limited to handwriting comparison and no comparison was involved in connection with the November exemplars.

■ Before admitting the examiner's opinion as to the November exemplars, the trial court held a hearing where evidence was tendered. At the tender hearing, the examiner (1) described the exemplars as written with lack of skill and with obvious distortions so that the exemplars were not identifiable as having been written by the person who wrote the October exemplars; (2) explained the basis for her description, including the fantastic forms and distortions in the November exemplars; and (3) testified that attempts to disguise handwriting were within the scope of her expertise. The examiner testified that in her work she had encountered attempts to disguise many times and it was something she looked for. She agreed that if she could not recognize such attempts she would not be much of an expert. Her opinion, on the basis of her training and sixteen years of experience, was that the November exemplars were an attempt to disguise. On cross-examination she explained that her opinion was not based on any subjective mental state of Deutsch, but on the physical evidence (the exemplars).

The trial court did not abuse its discretion in admitting the examiner's opinion as expert testimony. *State v. Gilbert,* 100 N.M. 392, 671 P.2d 640 (1983); *see In Re Estate of Foster,* 102 N.M. 707, 699 P.2d 638 (Ct.App.1985).

(b) Character Testimony

NMSA 1978, Evid.Rule 404(a) (Repl. Pamp.1983) provides generally that evidence of a person's character is not admissible for the purpose of proving that he acted in conformity therewith. Evidence Rule 404(b) provides that evidence of other wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.

Deutsch claims that the examiner's opinion that he attempted to disguise his handwriting in the November exemplars was inadmissible character evidence. We disagree.

■ Deutsch's attempt to disguise his handwriting in the November exemplars, at a time he was charged with multiple forgeries, was relevant evidence showing a consciousness of guilt. *State v. Vallejos,* 98 N.M. 798, 653 P.2d 174 (Ct.App.1982), and cases therein cited. Testimony as to the attempt to disguise was not admitted to prove that Deutsch acted in conformity to his character and was not inadmissible character evidence.

## SUFFICIENCY OF THE EVIDENCE FOR THE FORGERY CONVICTIONS

There are eight forgery convictions. Deutsch attacks the sufficiency of the evidence as to each conviction. The attack has two parts.

■ (a) Deutsch asserts the evidence is insufficient to show that he endorsed the several checks or caused others to endorse the checks with his name. We disagree. The totality of the evidence and the legitimate inferences therefrom, including the testimony of the examiner, of Yudis, Deutsch's admission of a "mistake" and the circumstances in the handling and cashing of the checks, is substantial evidence that Deutsch either endorsed the checks or caused others to endorse his name.

(b) Deutsch asserts that even if he did endorse the checks, he signed only his own name. For all but one of the forgeries, we agree.

■ The jury was instructed, for each forgery charge, that there must have been a false endorsement. NMSA 1978, Section

30–16–10(A) applies to this case and defines "forgery" as "falsely making * * * any signature * * *." Deutsch signed his own name. However, in count No. 7 (see the Haws loan transaction), a payee was "Harold Douglass Trustee." The endorsement of the name "Harold Douglass Trustee" was false. Deutsch's conviction of forgery in count No. 7 is affirmed. The signing of his own name on the other checks was not forgery, because it was not a false signature. *State v. Bibbins*, 66 N.M. 363, 348 P.2d 484 (1960).

The evidence that Deutsch's endorsement of the checks was without authorization is substantial. The validity of the forgery convictions, other than count No. 7, depends on whether Deutsch's signing of his own name, without authorization, amounts to forgery. Section 30–16–10(A) does not define forgery in terms of lack of authorization. Compare the wording of the statute involved in *People v. Young*, 19 Ill.App.3d 455, 311 N.E.2d 609 (1974).

The state asserts that a genuine signature, without authorization, is forgery in New Mexico. It cites *State v. Lopez*, 81 N.M. 107, 464 P.2d 23 (Ct.App.1969), but that case does not support the state. *Lopez* involved the signing of the name of the payee, falsely, when Lopez was not the payee.

The State asserts that a genuine signature, without authorization, *should* be forgery in New Mexico. It cites *People v. Susalla*, 392 Mich. 387, 220 N.W.2d 405 (1974). *Susalla* does support the state; the court interpreted the Michigan forgery statute to include a genuine signature without authorization. In so holding, the Michigan court rejected the common law view that forgery did not include misrepresentation of agency. *See Gilbert v. United States*, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962). The power to define crimes is a legislative function in New Mexico. *State v. Allen*, 77 N.M. 433, 423 P.2d 867 (1967). This court lacks authority to trespass on the legislative power by adding a "without authorization" provision to the

statutory definition of forgery. N.M. Const. art. III, § 1.

The state also cites two Texas cases. In *Moore v. State*, 666 S.W.2d 632 (Tex.App. 1st Dist.1984), the defendant signed his own name but pretended to be another person with the same name. This was forgery under the applicable Texas statute, which defined forgery to include the execution of a writing which purported to be the act of another who did not authorize the act. *Sales v. State*, 628 S.W.2d 796 (Tex. Cr.App.1982), involved the same statutory definition in Texas. The New Mexico statute does not contain such a definition.

R. Perkins & R. Boyce, *Criminal Law*, Chapter 4, Section 8 at 418 (3d ed.1982), points out that for forgery at common law, it is not sufficient for the writing to tell a lie, the writing itself must be a lie.

Where an agent, who has a general power to sign for his principal, indorses his principal's name on a negotiable instrument in fraudulent abuse of his power, this is not forgery because the indorsement is fully effective. An additional point is to be noted in cases in which one fraudulently purports to act as agent for another. If he has no power or authority to act in this capacity, the other will not be bound; but if the signature contains both names and shows that the signer was purporting to act as agent for the other, the writing is not a forgery. R. Perkins & R. Boyce, *supra*, at 420 (footnotes omitted). *See* 4 *Wharton's Criminal Law*, § 497 (C. Torcia 14th ed. 1981). As *Gilbert v. United States* points out, at common law, the endorsing of a bill of exchange under a false assumption of authority to endorse is not forgery because there is no false making.

In seven of the eight forgery convictions, Deutsch endorsed or caused his name to be endorsed to the check. This was not a false endorsement, only an endorsement without authorization. This was not forgery as defined in Section 30–16–10(A).

We reach this result without assistance from Deutsch, who cited no authority in support of the result reached. However,

we cannot affirm on the basis of *In Re Adoption of Doe* because due process of law requires that there be sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt. *State v. Sheets*, 96 N.M. 75, 628 P.2d 320 (Ct.App.1981). Seven of the eight forgery convictions must be reversed because the evidence of endorsement without authorization was insufficient to justify a rational trier of fact to find guilt. This is not a criticism of the jury. It asked: "Would the endorsement of a monetary instrument, signed with the true name of the endorser, but in direct contradiction to a court order forbidding the negotiation by said party, constitute forgery?" The question was not answered in the trial court. The answer, however, under Section 30–16–10(A), is "No."

The sentence in Cause No. 37206 is affirmed. The convictions and sentences in Cause No. 37738 for larceny, fraud and embezzlement are affirmed. The conviction and sentence for forgery, identified in count No. 7 of Cause No. 37738, are affirmed. The remaining seven forgery convictions are reversed.

IT IS SO ORDERED.

HENDLEY and MINZNER, JJ., concur.