THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DWAYNE SPIVEY, Appellant.

First Department, March 12, 1992

### APPEARANCES OF COUNSEL

*Steven A. Feldman* of counsel *(Feldman & Feldman,* attorneys), for appellant.

*Hilary Hassler* of counsel *(Mark Dwyer* and *Patrick J. Hynes* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

Ross, J.

Defendant was convicted, after a jury trial, of the crimes of attempted robbery in the second degree, attempted robbery in the third degree, attempted grand larceny in the fourth degree and assault in the second degree. On this appeal defendant contends, *inter alia,* that: (1) the trial court abused its discretion when it failed to fashion an appropriate sanction for the loss of the arresting officer's memorandum book, (2) the trial court erred by failing to dismiss the assault count, in view of the fact that the assault in question was carried out by defendant's codefendants after the defendant was in custody and handcuffed, and (3) the trial court erred by submit-

ting a verdict sheet to the jury containing notations with respect to the theories of the various counts.

On September 25, 1989, New York City Transit Police Officers arrested the defendant, Joseph Brewer and Randolph Harris, in New York County. Thereafter, by indictment number 11101, filed October 4, 1989, defendant, Brewer and Harris were charged with the crimes of robbery in the second degree (Penal Law § 160.10 [two counts]), grand larceny in the fourth degree (Penal Law § 155.30), and assault in the second degree (Penal Law § 120.05). Subsequently, defendant and Mr. Harris entered pleas of not guilty, and, on April 26, 1990, proceeded to a joint jury trial on the charges contained in that indictment.

The People's evidence against defendant consisted chiefly of the eyewitness testimony of New York City Transit Police Officers Angelo Carro and Stephen Schumacher, who on September 25, 1989, were assigned to the plainclothes anticrime foot patrol in the vicinity of Sixth Avenue and 34th Street, Manhattan.

Officer Carro testified that, at approximately 1:15 P.M., just as he was entering the subway station at the corner of Sixth Avenue and 34th Street, he saw the defendant, Brewer, Harris and a fourth unidentified young man run into the station from the opposite side of Sixth Avenue. The group ran by a token booth and up the stairs past where Officer Carro was walking. According to Officer Carro, the subject group stopped on a landing heading up to the street and began arguing over a division of money. The conversation Officer Carro heard aroused his suspicions about the group. Accordingly, he decided to follow them.

As soon as Officer Carro returned to the street, he alerted his partner, Officer O'Brien. Thereafter, at the corner of Sixth Avenue and 34th Street, Officers Carro and O'Brien met Officer Schumacher, and his partner, Officer Prieto, who were also on plainclothes anticrime foot patrol in that same area. Officer Carro pointed out the four young men, who had remained standing on the crowded street corner, to Officers Schumacher and Prieto.

Then, for approximately 30 to 40 minutes the four officers followed the defendant and his three companions, as they walked around in the area bounded on the east and west by Seventh and Eighth Avenues and on the north and south by 34th and 32nd Streets.

When the group arrived at a location near the corner of 37th Street and Seventh Avenue, Officer Schumacher saw the defendant step in front of a man who was carrying a bag in each hand. The other perpetrators surrounded the man, with Harris stepping up behind him. Harris reached into the man's right pocket with his right hand, then removed it with his hand clenched. He then turned and ran towards Officer Schumacher. Although the victim yelled and attempted to pursue Harris, defendant's companion Brewer blocked the man's path. Harris, Brewer and the unidentified perpetrator then ran west towards Eighth Avenue.

According to Officer Schumacher, the defendant remained in the immediate vicinity. The officer approached, and though defendant initially resisted, successfully arrested him, with the assistance of Officer Prieto. Officer Schumacher left the now-handcuffed defendant in Officer Prieto's custody, and pursued the defendant's three companions, who had fled into the subway station at Eighth Avenue.

Officer Schumacher spotted the three fleeing perpetrators through the open doors of a train waiting at the express platform. As the officer identified himself, Mr. Brewer rushed through the doorway and the two began to struggle. Then the other two perpetrators exited the train onto the platform. Brewer repeatedly struck the officer in the head and kicked him in the leg during the struggle to free himself from the officer's hold. Eventually Brewer's shirt ripped and he freed himself. Harris and Brewer fled into the subway tunnel, by jumping onto the track area. The unidentified perpetrator escaped through a street exit. Subsequently, Harris and Brewer were apprehended at 400 West 38th Street, by Officer Carro, who had responded to Officer Schumacher's radio transmission for assistance.

Neither the defendant, nor Mr. Harris, presented any evidence. The jury found defendant guilty of the crimes of attempted robbery in the second degree, attempted robbery in the third degree, assault in the second degree, and attempted grand larceny in the fourth degree. He was sentenced, as a second violent felony offender, to concurrent indeterminate terms of from 3 to 6 years on the attempted second degree robbery count, to 2½ to 5 years on the assault count, to 2 to 4 years on the attempted third degree robbery count, and to one year on the larceny count.

Just prior to the commencement of the trial, it was discov-

ered that Officer Schumacher's memo book containing his entries concerning this case was lost. Officer Schumacher had turned in the memo book in accordance with departmental procedure, but the book was lost, with approximately 24 others, while in transit to the department's storage facility. Since efforts to locate the memo book proved fruitless, the trial court held a hearing to reconstruct the contents of the book which pertained to this case.

At the hearing, Officer Schumacher stated that he usually made very detailed entries into his memo book, and then proceeded to testify in great detail concerning the incident. Supervisory officers testified concerning the department's procedures for receiving, transporting and storing the completed memo books turned in by officers. In addition, records were produced which showed that Officer Schumacher had properly turned in the memo book in question, but that the entire group of memo books had never arrived at the departmental storage facility. At the conclusion of the hearing, counsel for codefendant Harris argued that the police had failed to preserve the memo book, that Schumacher's testimony was incredible because it was too detailed, and that substantial prejudice had resulted from the loss. Defendant's counsel joined in cocounsel's application for a mistrial. Alternatively, it was requested that Officer Schumacher be precluded from testifying about the contents of the memo book.

The trial court found Officer Schumacher's testimony to be credible and although noting that the loss was deplorable, found that Officer Schumacher was not at fault. The application for a mistrial was denied, and no sanction was imposed on the prosecution. The trial court's determination not to impose any sanction was apparently based on its conclusion that no prejudice to defendant resulted from the loss of the memo book, since the memo books of the other three officers involved had been produced.

Whether or not the memo book constituted *Rosario* material is not an issue in this case, as the People do not dispute same *(People v Wallace,* 76 NY2d 953, 955). The rules with respect to the People's duty to preserve evidence, and the proper course of action when that duty is breached, are clear and strict. In *People v Martinez* (71 NY2d 937, 940) the Court of Appeals stated: "Just as the People have a duty to produce *Rosario* material they also have a correlative 'obligation to preserve evidence until a request for disclosure is made' *(People v Kelly,* 62 NY2d 516, 520; *see also, United States v*

*Bryant,* 439 F2d 642; *People v Saddy,* 84 AD2d 175). Thus, it is no answer to a demand to produce that the material has been lost or destroyed. If the People fail to exercise care to preserve it and defendant is prejudiced by their mistake, the court must impose an appropriate sanction. The determination of what is appropriate is committed to the trial court's sound discretion, and while the degree of prosecutorial fault may be considered, the court's attention should focus primarily on the overriding need to eliminate prejudice to the defendant *(People v Kelly, supra,* at 520-521)."

■ While it is tacitly acknowledged that the loss of the memo book constituted a breach of the People's duty to preserve evidence meriting some sanction, the People maintain that no prejudice resulted to this defendant and that the trial court's response was appropriate. We disagree. The prejudice to this defendant occasioned by the loss of Officer Schumacher's memo book is clear, and while the declaration of a mistrial may have been too severe a sanction, the failure to impose any sanction at all, was clearly error.

Officer Schumacher was the only witness to the incident which resulted in the defendant's arrest who testified. While cross-examination disclosed that Officer Schumacher provided some information to Officer Carro, the officer who completed some of the arrest forms, there existed no material comparable to the memo book (e.g., other contemporaneous writings authored by Schumacher himself) upon which cross-examination of Officer Schumacher could have been based. Neither the memo books of the other officers involved nor, the transcript of the reconstruction hearing could, in this case, be considered an adequate substitute for the lost memo book itself. The evidence presented at the reconstruction hearing, and the fact that the prosecutor made no reference to the memo book during the trial, did little to eliminate the prejudice to defendant occasioned by the loss of the only adequate material upon which competent cross-examination of Officer Schumacher could have been based. The hearing was not a substitute for the actual memo book. The trial court was required to fashion some sanction, and its failure to do so was reversible error *(People v Wallace, supra; People v Martinez, supra; People v Kelly,* 62 NY2d 516, 520, *supra).*

■ We also find the trial court's annotation of the verdict sheet submitted to the jury to be error. In addition to the detailed oral instructions on the law given to the jury, the court submitted a verdict sheet listing the four counts of the

indictment as well as the various lesser included offenses under each of the counts along with the possible verdicts for each. To this verdict sheet, the court added explanatory language next to three of the counts. During the charge the court, after explaining the elements of the various robbery counts, stated; "I am going to give you a verdict sheet that will explain it to you, not that will explain it to you, not to guide you [sic]". While counsel for both defendants objected, the court insisted that it would be helpful to the jury to be able to distinguish between the different counts and accordingly the verdict sheet submitted to the jury contained the court's explanatory language.

While it was not error for the trial court to submit a verdict sheet listing the various counts of the indictment and the possible verdicts for each (CPL 310.20), it was error to include written explanations of the elements of some of the counts, over the objections of defendants' counsel (People v Nimmons, 72 NY2d 830).

The situation presented by this case is not analogous to that presented in People v Tucker (77 NY2d 861), relied on by the People. In People v Tucker (supra), the court distinguished the situation therein, where a juror took notes during the court's reissuance of instructions on the elements of some of the crimes, from that presented herein, where the court, in effect gave the jury selected excerpts from the written charge. It was specifically noted in Tucker (supra, at 863) that as contrasted with giving a jury selected portions of the written charge, matter contained in a juror's notes would not be given undue importance by the jurors themselves. The contrary is true where the jury possesses matter written by the trial court. Furthermore, the court's confusing statement concerning the verdict sheet, during the charge, may have served to exacerbate the error.

The failure to fashion appropriate sanctions in connection with the loss of Officer Schumacher's memo book, and the submission of the annotated verdict sheet were errors requiring reversal of defendant's conviction and remand for a new trial on all counts, except that which charged the defendant with second degree assault in connection with the assault on Officer Schumacher.

That assault was carried out by the codefendants after this defendant was already arrested, handcuffed and in the custody of Officer Prieto. Officer Schumacher testified that, while his

partner followed with the handcuffed defendant when Schumacher first set out after the other three perpetrators, his partner was not with him on the subway platform when he was attacked by Mr. Brewer.

Penal Law § 120.05 (6) provides that a person commits an assault when "[i]n the course of and in furtherance of the commission or attempted commission of a felony * * * or of immediate flight therefrom, he, or another participant if there be any, causes physical injury to a person other than one of the participants". The difficulty presented by this defendant's conviction under this section, is that the defendant did not flee with the other participants in the robbery and, was in fact incapable of participating in any action which occurred away from the scene since he was arrested and under the control of another officer, on the street, when the assault occurred on the subway platform.

■ It is well settled that in order to hold an accessory liable for the crime committed by the principal actors it must be proved beyond a reasonable doubt that the accessory possessed the mental culpability necessary to commit the crime charged, and that in furtherance thereof he solicited, requested, commanded, importuned or intentionally aided the principals. (Penal Law § 20.00; *People v Taylor,* 141 AD2d 581, *lv denied* 72 NY2d 962.) The People argue that defendant's participation in the robbery is sufficient to hold defendant culpable for the assault that followed his arrest no matter what the circumstances. We disagree. In *People v Sanchez* (128 AD2d 377, 379-380) we declined to accept the People's argument that the felony assault statute can be analogized to a felony murder, where participation in the robbery has been held to function as a replacement for the *mens rea* or intent necessary for the murder. We cited the Court of Appeals case of *People v Berzups* (49 NY2d 417) and stated:

"As the Court of Appeals stated in *Berzups* (at 427): '*In contrast to the usual lesser included offense situation,* in felony murder the underlying felony is not so much an element of the crime but instead functions as a replacement for the *mens rea* or intent necessary for common-law murder. This view accords with the historical development of the felony murder doctrine and the legislative policy reflected in its current statutory descendant, both of which underscore the fact that the corpus of the crime is the killing of another.' (Emphasis added.)

"No such 'historical development' provides any antecedent for similar treatment of the felony assault statute with which we are concerned." (128 AD2d, *supra,* at 379-380.)

Accordingly, where felony assault is concerned, a separate distinct felony is not to be viewed as a replacement for the *mens rea* or intent necessary for the assault, and the People's reliance on *People v Gladman* (41 NY2d 123, 125), a felony murder case, is misplaced. The evidence in this case, which shows that it was factually impossible for defendant to have participated in the assault on Officer Schumacher, cannot support the conclusion that the defendant, although a participant in the robbery, possessed the requisite intent to be guilty of the assault on the police officer. Therefore that charge must be dismissed.

We have reviewed the defendant's remaining arguments on appeal and find them to be without merit.

Accordingly, the judgment of Supreme Court, New York County (Nicholas Figueroa, J.), rendered May 22, 1990, is reversed, on the law, and the matter is remanded for a new trial on all counts, except count five of the indictment, charging the defendant with assault in the second degree (Penal Law § 120.05 [6]), which count is dismissed, and the trial court is directed to fashion an adequate sanction for the *Rosario* error.

Murphy, P. J., Sullivan, Ellerin and Kassal, JJ., concur.

Judgment of the Supreme Court, New York County, rendered May 22, 1990, is reversed, on the law, and the matter is remanded for a new trial on all counts, except count five of the indictment, charging the defendant with assault in the second degree (Penal Law § 120.05 [6]), which count is dismissed, and the trial court is directed to fashion an adequate sanction for the *Rosario* error.