THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIE DUNN, Also Known as CHARLES SHERWOOD, Appellant.

First Department, January 7, 1993

**APPEARANCES OF COUNSEL**

*Diane Pazar* of counsel, New York City *(Philip L. Weinstein,* attorney), for appellant.

*Morrie I. Kleinbart* of counsel, New York City *(Norman Barclay* and *Eleanor J. Ostrow* with him on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

**OPINION OF THE COURT**

ASCH, J.

The charges in this case arise from five separate incidents, beginning in July 1986. On July 3, 1986, a man representing himself as an executive of a foreign branch of General Electric

Corporation, asked that $5,000 in travelers' checks be prepared and delivered to an associate, K.D. Huffman. Thereafter, defendant appeared at the offices of General Electric, identifying himself as K.D. Huffman, and as Huffman, signed five Citicorp travelers' checks purchase agreements, one for each of five $1,000 packets of checks, then signed many of the checks in the upper left hand corner, as required of purchasers. When it was discovered a week or two later that there had been no authorization for the checks, most, if not all, of the checks had been negotiated at various metropolitan locations. Defendant was convicted of one count of grand larceny in the second degree for stealing property having an aggregate value in excess of $1,500, three counts of forgery in the second degree and three counts of criminal possession of a forged instrument in the second degree with respect to the travelers' checks and of forgery in the second degree with respect to the purchase agreement.

On August 14, 1986 to August 18, 1986, defendant stayed at the Days Inn in Manhattan registering as Kevin D. Huffman, and advancing $140 as a deposit. During his stay, he presented the cashier with a purchase order from the Metropolitan Life Insurance Company, providing that Met Life was to be billed for the room, taxes and incidental expenses. Days Inn refunded defendant his initial deposit and the bill for his four-day stay ($819.67) was never paid since defendant was neither employed by Metropolitan nor authorized to present such a purchase order. Defendant was convicted of criminal possession of a forged instrument in the second degree.

On August 22, 1986, defendant was arrested at the Omni Park Central Hotel when the police traced his car to that location and learned a K.D. Huffman was registered there. A Chevron Gulf credit card belonging to Rita Goodgame was recovered from defendant. Upon his arrest, defendant was charged with forgery in the second degree, criminal impersonation in the second degree, and theft of services, all arising from the Days Inn incident. At the trial, defendant was acquitted of criminal possession of stolen property in the second degree relating to the possession of the Chevron credit card.

On September 12, 1986, an assistant manager at the Helmsley Palace Hotel received a call from someone identifying himself as Ismael Lopez, the controller of the hotel, and advising the assistant manager that a number of envelopes were to be delivered to him and Mrs. Helmsley at the hotel

and that they should be paid for out of petty cash. Later that evening, the defendant delivered four envelopes for which the assistant manager paid him $500. The envelopes contained newspapers. Defendant was acquitted of grand larceny in the third degree.

On September 15, 1986, the defendant employed the identical stratagem at the St. Regis Hotel and received $750. He was convicted of grand larceny in the third degree for stealing property with an aggregate value in excess of $250.

■ During cross-examination, Detective Delgrosso admitted he had discarded between 40 and 70 pages of notes he had taken during his investigation. His testimony made clear he had destroyed them only after using them to prepare his formal reports, adding "[t]here may have been one or two notes that I didn't make note of at the time [when the formal reports were prepared] but later on I probably did". The People concede that many of the destroyed notes would constitute *Rosario* material *(People v Rosario,* 9 NY2d 286), but assert that defendant failed to make a timely request for a sanction because of the destruction of the scratch notes, and therefore the issue has not been preserved for review. However, the defendant made a motion *prior to the charge* that the indictment be dismissed, or, in the alternative, that Delgrosso's testimony be stricken. Since the notes concededly had been destroyed, defendant could not use them at trial regardless of when he requested a sanction. Further, since the court was apprised of the request and need for a sanction before it charged the jury, it could have fashioned an adverse inference charge which would have been an appropriate sanction under the circumstances *(see, People v McMahon,* 180 AD2d 535).

■ The People also contend that defendant was not prejudiced by the unavailability of the notes. However, the cross-examination of Detective Delgrosso established he had destroyed a large volume of contemporaneous notes after he "probably" transferred the information to formal police reports. The detective admitted on cross-examination that the destroyed scratch notes might have contained descriptions from certain of the eyewitnesses. The People further acknowledge on appeal "the possibility that [the notes] had contained descriptions from the eyewitnesses which might have differed from the descriptions in evidence at the trial". Defendant's ability to cross-examine the investigating detective, as well as the eyewitnesses, was, therefore, impeded by the destruction of the scratch notes and some sanction was required (People v

Wallace, 76 NY2d 953, 955; *People v Martinez,* 71 NY2d 937; *see also, People v Spivey,* 177 AD2d 216, 221).

■ Finally, any claim that the formal reports were the "duplicative equivalent" of the destroyed scratch notes is without merit. Thus we have recently noted: "There is no merit to the People's contention that the detective's assurance at this trial that he 'transposed' the contents of the spiral notebooks into his reports carries more reliability than the 'incorporation' found insufficient in *Wallace*. No comparison with the unproduced material is available to support a finding that the official reports constituted a 'duplicative equivalent' " *(People v McMahon, supra,* at 536).

■ Defendant further contends that his nine-and-one-half-to-nineteen-year sentence is illegal and must be reduced since his second and third degree grand larceny convictions erroneously failed to reflect the benefit of the ameliorative change to the larceny statute, citing *People v Behlog* (74 NY2d 237). The amendment to the larceny statute took effect on November 1, 1986, after defendant committed the underlying crimes, but before his trial and sentencing. Pursuant to *People v Behlog (supra),* an ameliorative amendment to the larceny statute should be applied to prosecutions conducted after its effective date. It is true, as the People note, that the defendant in *Behlog* moved before trial to reduce the larceny charge against him in accordance with the ameliorative statute, and defendant herein did not argue his entitlement to the benefit of the ameliorative statute at any time before this appeal. However, we choose to exercise our discretion in the interest of justice and apply such statute to defendant.

With respect to the second degree grand larceny count, the indictment alleged and the jury found, pursuant to the charge of the trial court, that defendant stole property valued in excess of $1,500, the threshold, at the time, for second degree grand larceny. Since the People introduced proof suggesting that the travelers' checks were valued at $5,000, which is now below the threshold for second degree grand larceny, but above the threshold for third degree grand larceny ($3,000), we reduce that count of the indictment to third degree grand larceny. In like manner, the count of third degree grand larceny must be reduced to petit larceny since the threshold amount for fourth degree grand larceny is now $1,000, and the People's proof showed defendant stole property below that amount.

■ Further, as the People point out, the evidence does not support defendant's conviction of either the forgery counts or the three criminal possession of a forged instrument counts with respect to the General Electric charges. To come within the ambit of the forgery statute, "it is necessary that the actual maker or drawer be someone other than the ostensible maker or drawer and that the actual maker or drawer not have the authority to act for the ostensible maker or drawer" *(People v Levitan,* 49 NY2d 87, 91). The mere use or presence of a false name on a written instrument does not make the instrument a forgery. "The forged character of a document does not depend so much on whether it contains a falsehood, but on whether, on its face, it misrepresents its authenticity" *(People v Briggins,* 50 NY2d 302, 306). The defendant, herein, used a fictitious name to sign the purchase agreement and travelers' checks, but did not claim the name represented anyone but himself or that anyone but himself had made or drawn the documents. Since, unlike the purchase order defendant presented at Days Inn where the ostensible maker was the Metropolitan Life Insurance Company, defendant, himself, albeit under a fictitious name, was the ostensible maker of the travelers' checks and the purchase agreement in the General Electric larceny, the latter were *not* forgeries.

Since there was insufficient proof of defendant's guilt of the four counts of forgery in the second degree and three counts of criminal possession of a forged instrument in the second degree, based upon the travelers' checks he obtained from General Electric and the purchase agreement he signed for those checks, we dismiss those counts of the indictment.

We have examined the defendant's remaining contentions and find them to be without merit.

Accordingly, the judgment of the Supreme Court, New York County (Jeffrey Atlas, J.), rendered August 15, 1988, convicting defendant of one count each of grand larceny in the second and third degrees, and four counts each of forgery in the second degree and criminal possession of a forged instrument in the second degree, and sentencing him, as a second felony offender, to four sets of prison terms, each to run consecutively to the others: one group of concurrent terms of three to six years on the second degree grand larceny and forgery counts; another group of concurrent three-to-six-year terms on three of the possession of forged instrument counts; a two-to-four-year term on the remaining count of possession

of a forged instrument; and a one-and-one-half-to-three-year term on the third degree grand larceny count, should be reversed, on the law and facts, and as a matter of discretion in the interest of justice, the four counts of forgery in the second degree and three counts of criminal possession of a forged instrument in the second degree in the indictment dismissed, and the counts of grand larceny in the second and third degrees reduced to third degree grand larceny and petit larceny, respectively, and the matter remanded for a new trial on the counts remaining as reduced.

MILONAS, J. P., ELLERIN, ROSS and KASSAL, JJ., concur.

Judgment of the Supreme Court, New York County, rendered August 15, 1988, convicting defendant of one count each of grand larceny in the second and third degrees, and four counts each of forgery in the second degree and criminal possession of a forged instrument in the second degree, and sentencing him, as a second felony offender, to four sets of prison terms, each to run consecutively to the others: one group of concurrent terms of three to six years on the second degree grand larceny and forgery counts; another group of concurrent three-to-six-year terms on three of the possession of forged instrument counts; a two-to-four-year term on the remaining count of possession of a forged instrument; and a one-and-one-half-to-three-year term on the third degree grand larceny count, is reversed, on the law and facts, and as a matter of discretion in the interest of justice, the four counts of forgery in the second degree and three counts of criminal possession of a forged instrument in the second degree in the indictment dismissed, and the counts of grand larceny in the second and third degrees reduced to third degree grand larceny and petit larceny, respectively, and the matter remanded for a new trial on the counts remaining as reduced.