■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DASHAWN HAWES, Appellant. [750 NYS2d 132] —Peters, J. Appeals (1) from a judgment of the County Court of Albany County (Breslin, J.), rendered March 9, 1999, upon a verdict convicting defendant of the crimes of attempted murder in the second degree and assault in the first degree, and (2) by permission, from an order of said court, entered December 8, 2000, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

Shortly after midnight on the morning of June 12, 1998, Mundir Connor suffered multiple gunshot wounds. Investigation by the City of Albany Police Department quickly focused upon an individual known by the pseudonym "Dayrock" who was later identified as defendant. Thereafter, Detective Sean Keane interviewed Connor at the hospital. Connor also identified "Dayrock" as the perpetrator, explaining that he had been incarcerated with "Dayrock" in the Albany County Jail for approximately four months, seeing him once or twice a week during that time. Keane, who had a photograph of defendant with him, showed Connor the picture after he orally identified defendant as the perpetrator.

Four days after this incident, the Albany County Probation Department filed documents in Albany City Court alleging that defendant was in violation of his probation. In a cover letter requesting a warrant for his arrest, defendant's probation officer advised City Court that, in addition to defendant's violation of numerous conditions of probation, he "is about to be arrested by the Albany City Police on 6/18/98 based upon the information (attached) received by Detective Keane, Albany Police Department, which involved [defendant's] shooting a subject with a handgun." The next day, City Court issued a warrant for defendant's arrest.

On June 18, 1998, defendant was arrested by Albany Police Officer John Monte for violating the terms of his probation. Keane interviewed defendant regarding the shooting. After being administered *Miranda* warnings, defendant denied any involvement. Nonetheless, Keane charged him with criminal conduct arising out of the incident and Monte proceeded to process him. According to Monte, defendant spontaneously said to him, "Do you think the Court's going to think it was self defense?" Keane, who had gone off duty by such time, returned at 1:00 A.M. the following morning to speak with defendant. After reminding defendant of his *Miranda* rights, defendant vol-

untarily explained his involvement in the shooting, asserting that he was involved in an ongoing, gang-related feud and that the gunshot wounds that Connor suffered were merely the latest episode in that dispute. He also contended that Connor was armed and that Connor's gun had misfired.

Following an indictment on charges of attempted murder in the second degree and assault in the first degree, defendant filed appropriate motions and a combined *Wade/Huntley* hearing was held at which both Monte and Keane testified. County Court denied defendant's motion to suppress the identification testimony, as well as his statements to Monte and Keane. A jury trial ensued after which defendant was convicted of both charges. He was thereafter sentenced to concurrent prison terms of 12 to 24 years on each charge. Defendant later unsuccessfully sought to vacate the judgment of conviction on the ground of a *Brady* violation. He now appeals both the judgment of conviction and the denial of his postconviction motion.

Defendant asserts that his arrest on the probation violation was a clever ruse meant to subject him to interrogation regarding the attempted murder prior to the attachment of his right to counsel on that charge. This subterfuge, he contends, combined with an intentional delay in his arraignment, mandates the suppression of those statements made to both Keane and Monte. Next, he contends that the letter from his probation officer to City Court was *Brady* material, which the People failed to provide, and County Court improperly denied his motion to vacate his conviction on those grounds.[1]

We disagree. Defendant's arrest on the probation violation was entirely proper (*see* CPL 410.40 [2]; 410.50 [4], [5]; Penal Law § 65.00 [2]), and the fact that his arrest could have been predicated on additional grounds is irrelevant (*see People v Fulton*, 257 AD2d 774, 775, *lv denied* 93 NY2d 1018). As to the contention of "unnecessary delay" in his arraignment which could mandate suppression of his statements to police authorities (CPL 140.20 [1]), the record reveals that defendant was taken into custody between 2:30 P.M. and 3:30 P.M. on June 18, 1998 where he was provided with *Miranda* warnings. He immediately waived those rights and spoke to Keane; he was formally placed under arrest at 5:20 P.M. and apparently arraigned on the probation violation the following morning. On Friday, July 10, 1998, he was indicted on attempted murder and assault charges and arraigned on those charges the following Tuesday. Hence, upon these facts, we find that defendant,

---

1. Defendant alternatively advances the contention that the letter constitutes newly discovered evidence.

taken into custody on a probation warrant, was brought before the sentencing court "without unnecessary delay" (CPL 410.40 [2]).

Nor do we find a *Brady* violation. The *Brady* doctrine obligates the prosecutor to disclose evidence in its possession which is material to "the credibility of a prosecution witness whose testimony may be determinative of guilt or innocence" (*People v Baxley*, 84 NY2d 208, 213). Where a defendant makes a generalized demand for disclosure, the trial court will only deem evidence material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different (*see People v Bryce*, 88 NY2d 124, 128). Here, there is no evidence to indicate that the letter from the probation officer was in the possession or control of the People (*see People v Santorelli*, 95 NY2d 412, 421). Instead, it appears that the letter was only in the possession of defendant's probation officer and City Court (*see People v Howard*, 87 NY2d 940, 941; *People v Livingston*, 262 AD2d 786, 790, *lv denied* 94 NY2d 881). Moreover, there exists no reasonable probability that the disclosure of this letter would have led to a more favorable outcome at either the suppression hearing or at trial, as it contains no material exculpatory to defendant.

Defendant's challenge to the out-of-court identification by Connor must also fail as Keane's presentation of a single photograph to Connor was not unduly suggestive. Having served time in jail with defendant and having advised the police that defendant, under the pseudonym "Dayrock," had been the shooter, Connor was, in our view, "impervious to police suggestion"; the photograph was not shown to him until after the police had established Connor's basis for his knowledge (*see People v Graham*, 283 AD2d 885, 886-888, *lv denied* 96 NY2d 940). However, we agree that Keane's testimony at trial concerning the identification constituted improper bolstering (*see People v Mosley*, 296 AD2d 595). There was no indication that defendant opened the door to the introduction of this evidence (*see People v Seit*, 86 NY2d 92, 95-96; *People v Patterson*, 88 AD2d 694, 695, *affd* 59 NY2d 794) and, thus, such testimony should not have been permitted on the People's direct case. Nonetheless, in light of the substantial proof indicative of defendant's guilt, we find the error harmless (*see People v Smith*, 97 NY2d 324).[2]

Addressing defendant's challenge to the weight and sufficiency of the evidence, we recognize that Connor initially testi-

---

**2.** Several facts distinguish this case from our recent decision in *People v Mosley* (*supra*). Here, defendant did not proffer an alibi defense, he was ar-

fied at trial that he did not know who shot him. This testimony was in direct contravention of his earlier testimony before the grand jury where he identified defendant as the shooter. After the People were permitted to impeach Connor, County Court suspended Connor's testimony and instructed him, outside of the jury's presence, to speak with his attorney regarding the penalties for perjury. With Connor thereafter returning to the stand and testifying that defendant had shot him, we find that, notwithstanding Connor's equivocation, the evidence, viewed in a light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621; *People v Peraza*, 288 AD2d 689, 691, *lv denied* 97 NY2d 707), established a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (*People v Bleakley*, 69 NY2d 490, 495 [citation omitted]). Notably, there was substantial testimony by Keane detailing defendant's admission that he shot Connor and that he had used a .22 caliber handgun in such endeavor; bullets of that caliber were removed by the surgeon who testified that Connor's injuries were life-threatening. Finding "the prosecution [to have] proved a prima facie case" (*People v Luck*, 294 AD2d 618, 619, *lv denied* 98 NY2d 699; *see People v Zabala*, 290 AD2d 578, 578, *lv denied* 97 NY2d 735), we conclude, viewing the evidence in a neutral light (*see People v Hood*, 279 AD2d 699, 700, *lv denied* 96 NY2d 863) and " 'weigh[ing] the relative probative force of conflicting testimony and the relative strength of conflicting inferences' " (*People v Bleakley, supra* at 495, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62), that defendant's convictions were not against the weight of the evidence.

Further concluding that the sentence is neither harsh nor excessive in light of defendant's extensive criminal history, we iterate that "[w]here a sentence is in the permissible range contemplated for the crime, we will not disturb it absent an abuse of discretion by the sentencing court or the existence of extraordinary circumstances warranting our intervention" (*People v Britt*, 283 AD2d 778, 781, *lv denied* 96 NY2d 916; *see People v Sczepankowski*, 293 AD2d 212, 215; *People v Dolphy*, 257 AD2d 681, 685, *lv denied* 93 NY2d 872). Finding neither circumstance here, we affirm.

Cardona, P.J., Mercure, Carpinello and Kane, JJ., concur. Ordered that the judgment and order are affirmed.

rested in close temporal proximity to his crimes and made voluntary incriminating statements.