■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY P. CUNNINGHAM, Appellant. [763 NYS2d 328] —Lahtinen, J. Appeal from a judgment of the County Court of Montgomery County (Catena, J.), rendered December 12, 2001, upon a verdict convicting defendant of the crime of forgery in the second degree.

In late 1997, defendant assisted Peter Morat in setting up a business known as Herkimer Precut, Inc. Defendant acted as a consultant for Herkimer Precut and he was eventually supposed to receive a 20% interest in the company once it met certain financial obligations. Morat entrusted the company's checkbook to defendant. Defendant was not authorized to sign checks, but Morat would frequently endorse blank checks that defendant was supposed to use to pay bills of Herkimer Precut. Upon being informed by creditors that bills were not being paid, Morat examined the company's bank records and reportedly found unauthorized payments, some on checks he had signed in blank and some on checks with a signature he did not recognize. An investigation ensued, culminating in two indictments (No. 044-2001 [27 counts] and No. 045-2001 [4 counts]) charging defendant with one count of grand larceny in the second degree, 15 counts of forgery in the second degree and 15 counts of criminal possession of a forged instrument in the second degree. Eight counts from Indictment No. 044-2001 were dismissed on the People's motion at trial. The jury convicted defendant of one count of forgery in the second degree from Indictment No. 045-2001, acquitted him of the other three counts in that indictment, and found no jurisdiction on the 19 counts remaining from Indictment No. 044-2001. Defendant was sentenced as a second felony offender to a term of incarceration of 3 to 6 years and now appeals.

Defendant initially contends that County Court's *Molineux* ruling was improper. Evidence of prior bad acts or criminal conduct is generally not admissible to prove a defendant committed a charged crime (*see People v Molineux,* 168 NY 264, 293 [1901]; *People v Chaney,* 298 AD2d 617, 618 [2002]; *People v Paige,* 289 AD2d 872, 874 [2001], *lv denied* 97 NY2d 759

[2002]). Exceptions to the general rule include introducing the evidence to show motive, intent, absence of mistake or accident, identity, or common scheme or plan (*see People v Rojas,* 97 NY2d 32, 37 [2001]). If the evidence falls within an exception, the court must further determine whether the probative value outweighs the potential prejudice (*see People v Blair,* 90 NY2d 1003, 1004-1005 [1997]; *People v Chaney, supra* at 618).

The prosecution sought permission to introduce several instances of prior bad acts and criminal conduct by defendant. County Court limited the prosecution to evidence about one prior instance, where defendant had pleaded guilty in 1997 to one count of falsifying business records in the first degree. In that case, defendant had worked as a consultant and manager at a hotel, where he obtained checks signed in blank to purportedly pay bills, but, instead, made the checks out to benefit himself. In the current case, defendant asserted a "claim of right" as an affirmative defense (*see* Penal Law § 155.15 [1]), contested the issue of intent and suggested that he had the authority to sign the checks. Under such circumstances and particularly in light of the recognized difficulty of proving intent in forgery cases (*see People v Dales,* 309 NY 97, 101 [1955]), we find no error in County Court's determination (which was accompanied by appropriate limiting instructions to the jury) that the 1997 crime was relevant to the issue of intent and that the probative value outweighed the potential for prejudice (*see id.; People v Aiken,* 293 AD2d 623 [2002], *lv denied* 98 NY2d 672 [2002]; *People v Lowenstein,* 203 AD2d 304, 304-305 [1994], *lv denied* 83 NY2d 873 [1994]; *see also People v Alvino,* 71 NY2d 233, 242-243 [1987]).

Next, defendant argues that County Court abused its discretion in granting the People's motion to consolidate the two indictments (*see* CPL 200.20). The decision to consolidate is within the discretion of the trial court based upon the particular circumstances of each case and generally should include a weighing of "the public interest in avoiding duplicative, lengthy and expensive trials against the defendant's interest in being protected from unfair disadvantage" (*People v Lane,* 56 NY2d 1, 8 [1982]; *see People v Watson,* 281 AD2d 691, 693 [2001], *lv denied* 96 NY2d 925 [2001]). Both indictments involved acts revolving around defendant's alleged abuse of his relationship with Morat, primarily by misusing the checkbook of Herkimer Precut. While defendant alleges that the prosecution urged consolidation to attempt to circumvent a potential jurisdictional problem, it is apparent from the verdict that the jury was not confused by this issue. We conclude that defendant has not

established an abuse of discretion by County Court or that he suffered an unfair disadvantage by the decision to consolidate the indictments (*see People v Beverly,* 277 AD2d 718, 719 [2000], *lv denied* 96 NY2d 780 [2001]).

Nor are we persuaded by defendant's contention that County Court unduly restricted the cross-examination of Morat by sustaining an objection in which counsel asked Morat whether he intended to give defendant the previously agreed upon 20% interest in Herkimer Precut. While it appears that the issue was not properly preserved for review (*see People v Sutherland,* 280 AD2d 622, 622-623 [2001], *lv denied* 96 NY2d 835 [2001]; *see also People v George,* 67 NY2d 817, 819 [1986]), we nevertheless find that the record reveals that defense counsel was permitted to cross-examine Morat about the agreement pertaining to the 20% interest in Herkimer Precut, and the limitation placed on the scope of that cross-examination was within County Court's discretion (*see People v Sutherland, supra* at 623; *People v Clarke,* 173 AD2d 550, 551 [1991]).

Defendant next argues that the count of the indictment upon which he was convicted failed to set forth sufficient facts. The indictment sets forth the date and place of the alleged criminal act, refers to the statute defendant was charged with violating, and incorporates allegations closely following the statutory language. An indictment that incorporates the provisions of the Penal Law allegedly violated is generally adequate (*see People v Squire,* 273 AD2d 706, 706-707 [2000]; *People v Diaz,* 233 AD2d 777, 778 [1996]). Moreover, a subsequent bill of particulars supplied additional information, and we find that the indictment and bill of particulars "provided defendant with enough detail to enable [him] to formulate a defense and to raise the constitutional bar of double jeopardy against subsequent prosecutions for the same offense" (*People v Fayette,* 239 AD2d 696, 697 [1997], *lv denied* 90 NY2d 904 [1997]).

Defendant argues as a fifth point in his brief that the verdict was not based on legally sufficient evidence and was against the weight of the evidence. His argument is premised primarily upon the fact that he apparently signed his own name to the check that formed the basis for the forgery conviction. The check was drawn on an account of Herkimer Precut and clearly stated on its face that it was a company check. There was evidence at trial that defendant used the check to pay a debt of one of his companies, falsely stating to the creditor that he owned Herkimer Precut.

"[T]he crime of forgery involves the making, altering, or completing of an instrument by someone other than the

ostensible maker or drawer or an agent of the ostensible maker and drawer" and, thus, forgery generally cannot be committed by "signing one's own name" (*People v Levitan,* 49 NY2d 87, 90 [1980]). There are, however, exceptions to the general rule (*see id.* at 90; *see also People v Briggins,* 50 NY2d 302, 307 [1980]). For example, a person who signs his or her own name to a check that is drawn on an account of a person with the same name, but without such person's authority, commits forgery (*see People v Barreau,* 183 AD2d 904 [1992], *lv denied* 80 NY2d 926 [1992]; *cf. Kraker v Roll,* 100 AD2d 424, 430-431 [1984]). Conversely, a person who uses an alias, signs as the alias, and the alias is not, in fact, a real person, has not committed forgery (*see People v Briggins, supra; cf. People v Ramirez,* 168 AD2d 907 [1990], *lv denied* 77 NY2d 965 [1991]; *People v Jackson,* 139 AD2d 837 [1988], *lv denied* 72 NY2d 919 [1988]). In the first situation, the actual maker and ostensible maker are not the same and the ostensible maker has not authorized the signing; whereas in the second situation the actual maker and ostensible maker are, in fact, the same. Here, the ostensible maker, as indicated on the face of the check as well as defendant's accompanying representations, was Herkimer Precut (*see generally United States v Fontana,* 948 F2d 796, 803 [1991] ["checks are essentially orders to pay issued to the bank by the owner of the account, who also is the maker of the check"]). Defendant affirmatively stated to the creditor that he had authority to act for Herkimer Precut when, in fact, he had no such authority, and he executed a Herkimer Precut check to pay a personal debt.

Such conduct by defendant falls within the statutory definition of forgery in the second degree, which includes a person who "falsely makes" a commercial instrument (Penal Law § 170.10; *see* Penal Law § 170.00 [4]). "A person 'falsely makes' a written instrument when he makes or draws a complete written instrument in its entirety * * * which purports to be an authentic creation of its ostensible maker or drawer, but which is not such * * * because the ostensible maker or drawer is fictitious or because, *if real, he did not authorize* the making or drawing thereof" (Penal Law § 170.00 [4] [emphasis added]; *see People v Levitan,* 49 NY2d 87, 90-91 [1980], *supra*).* Indeed, in *People v Levitan* (*supra*), the Court pointed out, with respect to

---

* The common-law crime of forgery has been supplanted in most jurisdictions by a statutorily defined crime. Several such statutes have been construed to include conduct similar to that in which defendant engaged (*see People v Susalla,* 392 Mich 387, 220 NW2d 405 [1974]; *Filor, Bullard & Smyth v Insurance Co. of N. Am.,* 605 F2d 598, 603-604 [1978], *cert denied* 440 US 962 [1979] [interpreting, in dictum, New York's forgery statute];

the allegedly forged deed that was signed by the defendant in a corporate capacity, that "[n]o claim is made that [the defendant] was not authorized to [sign deeds] by the corporate grantors" (*id.* at 89). In the current case, precisely such a claim was made and proven at trial. There was evidence, amply supported by the record, establishing that Herkimer Precut was a separate entity, Herkimer Precut had a corporate checking account, defendant lacked authority to make checks for Herkimer Precut, he stated to a creditor that Herkimer Precut was his corporation, and he executed a Herkimer Precut check to pay a personal debt. Viewing this evidence in the light most favorable to the People (*see People v Lynch,* 95 NY2d 243, 247 [2000]), all the elements of forgery in the second degree were established. Nor does viewing the evidence in a neutral light and "weigh[ing] the relative probative force of conflicting testimony and the relative strength of conflicting inferences" convince us that the verdict was against the weight of the evidence (*People v Bleakley,* 69 NY2d 490, 495 [1987] [internal quotation marks omitted]; *see People v Hawes,* 298 AD2d 706, 708-709 [2002]).

Finally, we are unpersuaded by defendant's contention that the sentence was harsh and excessive. While the amount of the check involved was only $195.50, defendant was a second felony offender and, despite the recommendations by the prosecution and in the presentencing report for the maximum sentence, defendant was sentenced by County Court to less than the maximum. We find neither an abuse of discretion nor extraordinary circumstances warranting modification of the sentence (*see People v Krzykowski,* 293 AD2d 877, 880 [2002]).

Crew III and Peters, JJ., concur.

Spain, J. (dissenting). This appeal presents the apparently novel question in this state of whether a person's conduct in signing his or her own name to a company check as the drawer/maker without the authority to do so constitutes the crime of forgery in the second degree under Penal Law § 170.10 (1). Because we believe that the facts here compel the conclusion that defendant was both the actual maker and the ostensible

36 Am Jur 2d, Forgery § 10, at 537 [2001 ed]; *cf. United States v Fontana, supra* at 803-804; *Commonwealth v Williams,* 391 Pa Super 389, 571 A2d 423 [1990]; *Hill v Sheriff, Clark County,* 95 Nev 438, 596 P2d 234 [1979]; *but see State v Deutsch,* 103 NM 752, 713 P2d 1008 [1985], *cert denied* 103 NM 740, 713 P2d 556 [1986], *cert denied* 476 US 1183 [1986]). It also merits noting that, in *People v Smith* (135 AD2d 1051 [1987]), a case involving a falsely completed document (*see* Penal Law § 170.00 [5]), we upheld a forgery conviction in which the defendant completed, in his own name and without authority, a traveler's check.

maker of this written instrument and that his signing was not done in such a way as to deceive others that the signer was in fact some third party, the proof cannot establish a forgery. This is true, notwithstanding (1) that the check implicitly contained a false representation regarding defendant's authority to bind Herkimer Precut, Inc.—the owner of the checking account—and that defendant falsely told the payee, his creditor, that he was the company owner and/or authorized to act on its behalf, and (2) that defendant intended to defraud that company (and its owner) by using a company check to pay a personal debt.

Our analysis begins with the requirement that an instrument is forged only if it is "falsely made, completed or altered" (Penal Law § 170.00 [7]; *see* Penal Law § 170.00 [4], [5], [6]). The majority concludes that defendant "falsely ma[de]" this instrument (Penal Law § 170.00 [4]). However, to constitute forgery under this section, "it is necessary that the maker or drawer be someone other than the ostensible maker or drawer and that the actual maker or drawer not have the authority to act for the ostensible maker or drawer" (*People v Levitan,* 49 NY2d 87, 91 [1980]; *see People v Johnson,* 96 AD2d 1083 [1983], *affd* 63 NY2d 888 [1984]). If the actual maker and ostensible maker are the same person, there is no forgery under this section (*see People v Levitan, supra* at 90-91; *People v Wesley,* 238 AD2d 939 [1997]; *People v Freeman,* 99 AD2d 648 [1984]). So defined, forgery ordinarily entails the actual maker/drawer's unauthorized act of signing the name of another existing person as the ostensible maker/drawer (*see People v Briggins,* 50 NY2d 302 [1980]; *People's Trust Co. v Smith,* 215 NY 488 [1915]; *People v Barreau,* 183 AD2d 904 [1992], *lv denied* 80 NY2d 926 [1992] [another person of same name]; *People v Ramirez,* 168 AD2d 907 [1990], *lv denied* 77 NY2d 965 [1991]). However, the act of signing an assumed name to a written instrument does not necessarily constitute forgery, unless it is the name of a real person who did not authorize it (*see People v Ramirez, supra; People v Johnson, supra* at 1083; *see also People v Lewandowski,* 255 AD2d 902 [1998] [signing brother's name to credit card receipt on account of former employer without authority is forgery]; *cf. People v Panetta,* 250 AD2d 710, 711 [1998], *lv denied* 92 NY2d 903 [1998]). Also, if the assumed name signed is the name of a fictitious person and the defendant directly or indirectly suggested that someone else was the ostensible maker/drawer, i.e., if the defendant misrepresents in some manner that the fictitious name refers to some other third party, it constitutes forgery (*see People v Briggins, supra* at 306-308; *People v Wesley, supra* at 939-940;

*People v Dunn,* 185 AD2d 54, 59 [1993], *lv denied* 81 NY2d 970 [1993]; *People v Rivers,* 111 AD2d 982 [1985]; *People v Freeman, supra* at 648; *People v Johnson, supra* at 1083-1084).

By comparison, the act of signing one's *own* name is forgery "only where the signing is done in such a way as to deceive others into believing that the *signer is in fact some third party*" (*People v Levitan, supra* at 90 [emphasis added], citing *People's Trust Co. v Smith, supra* [signing own name was forgery because it was also the name of the uncle with same name]; *see People v Asaro,* 94 NY2d 792 [1999]; *People v Briggins, supra* at 306; *People v Glazer,* 127 AD2d 689, 690 [1987]; 35A NY Jur 2d, Criminal Law § 4353 at 587).[1] This is so with regard to signing one's own name because the essence of "the crime of forgery [is] the making, altering, or completing of an instrument by someone *other than the ostensible maker* or drawer or [his or her] agent" (*People v Levitan, supra* at 90 [emphasis added]; *see International Union Bank v National Sur. Co.,* 245 NY 368, 372-373 [1927]; *People v Cannarozzo,* 62 AD2d 503, 505 [1978], *affd* 48 NY2d 687 [1979] ["the common-law rule [is] that forgery is the making of an instrument that purports to be made by someone else"]), and signing one's own name without accompanying deception as to one's identity as the signer would render the actual maker the ostensible maker as well.

Although not statutorily defined, "the ostensible drawer is the person who, from the face of the instrument, would appear to be its drawer, and not the person who in fact has the power to create such an instrument" (*People v Levitan,* 49 NY2d 87, 92 [1980], *supra*). We cannot agree with the majority's essential conclusion that Herkimer Precut, rather than defendant, is the "ostensible maker" of the check in issue based on the fact that it was a company check. Rather, we believe that defendant is the ostensible maker because he signed the check and, thus, the face of the check reflects that he is the drawer, i.e., by his signature defendant directed the bank to pay the payee the specified sum of money on behalf of the company. Despite defendant's lack of authority to so act, it would nonetheless appear to the world that defendant was the drawer/maker because "when an individual signs a name to an instrument and acknowledges it as his own, that *person* is the 'ostensible maker'" (*People v Briggins,* 50 NY2d 302, 307 [1980], *supra*

---

1. *Compare* 36 Am Jur 2d, Forgery § 10, at 538 (2001 ed): A person may be guilty of forgery although he or she signed his or her own name, if the instrument "is false *in any material part* and calculated to induce another to give credit to it as genuine and authentic" (emphasis added). This is clearly a broader definition of forgery than in New York.

[not forgery where defendant signed an assumed name but did not represent that it was the name of someone else] [emphasis in original]; *see* UCC 3-104 [1] [b]).

Critical to every forgery analysis is the distinction between an instrument which is falsely made, altered or completed, which is forgery (*see* Penal Law § 170.00 [3]-[7]; *People v Ramirez,* 168 AD2d 907 [1990], *supra*), and "an instrument which contains *misrepresentations not relevant to the identity* of the maker or drawer of the instrument," i.e., made falsely, which does not constitute forgery (*People v Levitan, supra* at 90 [emphasis added]; *see People v Briggins, supra* at 306 ["The forged character of a document does not depend so much on whether it contains a falsehood, but on whether, on its face, it misrepresents its authenticity"]; *People v Glazer, supra* at 690; *People v Cannarozzo, supra* at 504). Here, defendant's misrepresentations, i.e., the instrument's falsehoods, concerned defendant's *authority* to bind the company and not the identity of the maker and, thus, defendant's conduct did not constitute criminal forgery (*see People v Asaro, supra* at 793 [the defendant's misrepresentation concerning his date of birth was not forgery]; *People v Levitan, supra* at 90; *People v Adkins,* 236 AD2d 850 [1997], *lv denied* 90 NY2d 854 [1997]; *People v Glazer, supra* at 690 [falsities in credit application were unrelated to the defendant's identity, not forged instrument]; *People v Cannarozzo, supra* [falsity in license concerned the defendant's passage of higher test]; *People v Sangiovanni,* 52 AD2d 930 [1976]).

Here, defendant's act of signing his own name to a check without authority from the account holder/company to do so is conceptually indistinguishable from the defendant's action in *People v Levitan* (*supra*) of signing purported deeds transferring title to property that she did not own, although the deeds stated she did; the respective defendants' lack of right or authority to sign their own name to transfer property belonging to another did not constitute forgery, as the defendants never represented or attempted to deceive anyone that the instruments were signed by anyone other than themselves.[2] In these circumstances, the defendants' mere lack of authority to sign a written instrument in their own names does not consti-

2. While the Court of Appeals noted in *Levitan* that no claim was made that the defendant was not authorized to sign the deeds by the corporate grantors on whose behalf she signed as an officer, that defendant also signed one of the deeds "as an individual grantor" and no separate analysis was undertaken as to the latter. Thus, we conclude that *Levitan* is not limited to situations in which a defendant's authority to act on behalf of a principal is not disputed.

tute a forgery because they never held themselves out to be some third party (*id.* at 90). This is in accord with treatises and federal authority interpreting New York law that a person is "not guilty of forgery if he signs his own name as the purported agent of a principal, even though he has no authority from the principal to execute the instrument involved.\* \* \* [While] the instrument may contain a misrepresentation of fact as to the agency relationship, \* \* \* it does not misrepresent the identity of its maker" (Greenberg, New York Criminal Law § 16:3, at 684 [2002]; *see* 2 Groble, Callaghan's Criminal Law in New York § 26:06 [3d ed 1991]; 10 Zett, New York Criminal Practice § 111.1 [2] [b], at 111-4; 37 CJS, Forgery § 13, at 76 ["An agent \* \* \* may commit forgery by \* \* \* signing an instrument in disobedience of his instructions or in the improper exercise of his authority \* \* \* [, but] one who executes an instrument purporting on its face to be executed by him as an agent \* \* \* when in fact he has no authority \* \* \* to execute such instrument, is not guilty of forgery"]; *see also French Am. Banking Corp. v Flota Mercante Grancolombiana, S.A.,* 925 F2d 603 [2d Cir 1991], *affg* 752 F Supp 83, 89 n 7 [SD NY 1990]; *United States v Young,* 282 F3d 349, 351 n [5th Cir 2002] [in dicta, both interpret *People v Levitan (supra)* for the principle that an agent's conduct in signing a company check without actual authority is not forgery, recognizing that the contrary holding in *Filor, Bullard & Smyth v Insurance Co. of N. Am.* (605 F2d 598 [2d Cir 1978], *cert denied* 440 US 962 [1979]), decided before *People v Levitan (supra),* is no longer the law in New York]; *State v Deutsch,* 103 NM 752, 760, 713 P2d 1008, 1016 [1985], *cert denied* 476 US 1183 [1986] [using own name to endorse corporate check without authority is not forgery]; *cf. People v Susalla,* 392 Mich 387, 220 NW2d 405 [1974] [held that the defendant who signed own name to company check without authority committed forgery under a broader definition of forgery which includes any falsity in the instrument]).

Our decision in *People v Smith* (135 AD2d 1051 [1987]) is not to the contrary, as it involved a defendant who, without authorization, inserted his own name *as payee* on a lost, incomplete traveler's check which had already been signed by the owner/maker; that defendant also endorsed the back and cashed it. We held that under those facts, the defendant had "falsely complete[d]" the instrument by filling it in, creating the appearance that it was authorized by the ostensible maker, when it was not so authorized (Penal Law § 170.00 [5]; *see People v Smith, supra* at 1052). The defendant therein was not the actual or ostensible maker/drawer. The case sub judice

involves the different issue of whether defendant "falsely" made or drew this instrument (*see* Penal Law § 170.00 [4]) where he himself signed his own name as the maker/drawer, not as the payee, and implicates the requirements that defendant endeavored to deceive others into believing that he as the signer is in fact some third party (*see People v Levitan,* 49 NY2d 87, 90 [1980], *supra*), which defendant did not do here. Under the civil law applicable to commercial instruments, defendant may under these facts be liable on the check based upon his unauthorized signature (*see* UCC 3-404 [1] ["Any unauthorized signature * * * operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value"]; 1-201 [43] [" 'Unauthorized' signature or indorsement means one made without actual, implied or apparent authority and includes a forgery"]; UCC 3-404, Comment 1 [" '(u)nauthorized signature' * * * includes both a forgery and a signature made by an agent exceeding his (or her) actual or apparent authority"]; *New Georgia Natl. Bank v Lippmann,* 249 NY 307, 310 [1928]).

Here, however, defendant did not falsely make this check as that term is defined in the Penal Law for purposes of forgery because defendant was both the ostensible and actual maker (*see* Penal Law § 170.00 [4]). Under these circumstances, the check was an "authentic creation" of its ostensible maker; defendant's lack of authority to sign the check is irrelevant, since it is the lack of authorization from the ostensible maker/drawer to the actual maker which constitutes forgery, and defendant himself was both entities (*see* Penal Law § 170.00 [4]; *see People v Levitan, supra* at 90-91). While defendant, by his conduct, may have been guilty of larceny by trick or false pretenses (*see* Penal Law § 155.05 [2] [a]) or criminal impersonation in the second degree (*see* Penal Law § 190.25 [2]), we believe the evidence is legally insufficient to sustain a conviction for second degree forgery and would reverse the conviction and dismiss the indictment.

Mercure, J.P., concurs. Ordered that the judgment is affirmed, and matter remitted to the County Court of Montgomery County for further proceedings pursuant to CPL 460.50 (5).